Refusal to Consider Instructions.

---

ST. LOUIS & TENNESSEE RIVER PACKET COMPANY, Appellant, v. EDWARD NOWLAND, JR., and UNITED STATES FIDELITY & GUARANTY COMPANY.

Division One, September 27, 1919.

1. **STEAMBOAT: Rented: Losses Covered by Insurance.** The owner of a boat, having rented it to defendant and having assumed in the charter-party all losses covered by the insurance policies, can recover from the lessee, or from the surety on his bond, which included the charter-party, for no loss which was not covered by the insurance; and consequently the only question in a suit to recover from the lessee and his surety the value of the boat which sank is whether the losses were covered by the insurance.

2. **INSTRUCTION: No Exception.** A failure of appellant to mention in its motion for a new trial an instruction given by the court of its own motion precludes a consideration of any error therein on appeal.

3. **———: Loss of Steamboat: Cause.** If the owner of a steamboat assumed all losses covered by insurance thereon except losses due to negligence or wilful conduct of the master, officers or crew or from overloading, it was not error to instruct the jury that such owner and surety were "not required to show definitely and certainly what caused the sinking of the steamer;" for if they showed that the vessel was handled with care and skill and was not overladen, it became the duty of the owner, in suing for the value of the boat which sank, to show what the cause of the

loss was to be found in some one of the exceptions mentioned in the contract.

4. **EVIDENCE: Loss of Boat: Competent Employees.** Where the owner of the leased steamboat assumed all losses covered by insurance policies except those caused by the gross negligence, recklessness, or wilful misconduct of the master, officers or crew of the vessel, testimony of the lessee that the officers and crew selected by him as captain of the vessel were competent and careful and of good reputation in their nautical calling was competent for the purpose of meeting the issue of "wilful misconduct," although it might not have been competent in defense of a specific act of negligence.

5. ———: **Marine Protest: Used by Protestants to Establish Defense: Self-Serving Evidence.** In a suit by the owner of a steamboat, prosecuted by insurance companies for themselves and said owner in the name of the owner, against the lessee and his surety for the value of the boat which sank and was lost, a marine protest, made by the master and other officers and members of the crew at the time of the accident, and made for the benefit of the owner and those interested in the cargo and of the officers and crew as well, and containing a statement under oath of all the circumstances of the voyage leading up to the accident and of the particular accident itself, and containing a statement of the notary that he protests in behalf of all persons interested against the winds, waves and perils of rivers as the cause of the disaster, and used by the insurance companies as a basis of settlement with the owner in whose behalf the insurance was made, is competent evidence on behalf of defendants, for what it is worth, as evidence of its truth against the owner, who, having used it to obtain a settlement from the insurance companies, nevertheless seeks to recover from the lessee and his surety by disputing the facts stated in it whose truth he asserted when he obtained the settlement.

6. **REMARKS OF COUNSEL: Interest of Unnamed Party.** Where insurance companies are not only interested in the result of the suit but are substantially parties to its prosecution, though not nominal parties, remarks of counsel indicating their interest in the issue of the trial, in keeping with the facts before the jury, are not unwarranted argument.

7. **EVIDENCE: Opinion Growing Out of Experience.** An expression of an opinion by witnesses who have by actual experience obtained knowledge of the matters concerning which they testify is not incompetent or prejudicial.

# Appeal from St. Louis City Circuit Court.—*Hon. Kent K. Koerner,* Judge.

Affirmed.

*Jourdan, Rassieur & Pierce* for appellant.

(1) Where the answer admits the allegations of the petition and seeks to avoid same by pleading affirmative defenses, as in this case, the burden of proof is on defendants. Richardson v. George, 34 Mo. 104; St. Louis Tow Co. v. Orphans' Benefit Ins. Co., 52 Mo. 529; Glover v. Henderson, 120 Mo. 367; Knoche v. Whiteman, 86 Mo. App. 568; Schutter v. Adams Express Co., 5 Mo. App. 316; Kent v. Miltenberger, 13 Mo. App. 503; Gray's Harbor Comm. Co. v. Cont. Nat. Bank, 74 Mo. App. 633; Bunker v. Hibler, 49 Mo. App. 536. (2) It is error to place the burden of proof where it does not legally rest, and it was therefore error to give Instruction 10. Sidway v. Mo. Land & Live Stock Co., 163 Mo. 342; Aylward v. Briggs, 145 Mo. 604; Knoche v. Whiteman, 86 Mo. App. 570; Almes v. Conway, 78 Mo. App. 490. (3) Instructions to the jury should not be misleading and calculated to divert the jury's attention from the main issue in the case. Such was the effect of giving Instruction 9, and the court erred in giving said instruction. Sidway v. Mo. Land & Live Stock Co., 163 Mo. 342; Price v. Breckenridge, 92 Mo. 378. (4) In instructing juries it is the duty of the court to determine question of law, and to give to the jury the legal effect of contracts, and it is error to submit to them such questions of law. It was therefore error to give Instruction 5. St. L., K. C. & N. Ry. Co. v. Cleary, 77 Mo. 634, 638; Turney v. St. L. & S. F. Ry. Co., 76 Mo. 261; Brannock v. Elmore, 114 Mo. 63; Henry v. Bassett, 75 Mo. 89; Albert v. Besel, 88 Mo. 150; Morgan v. Durfee, 69 Mo. 469. (5) The marine protest made by defendant Nowland as master of the steamer Shiloh was a self-serving statement and was not admissible in evidence in favor of the defendants merely because plaintiff, as owner of the steamer, in its proofs of loss against the insurance

companies made reference to such protest; and the court erred in admitting the protest over plaintiff's objection. Such documents, when so referred to, would be admissible against the plaintiff owner, in an action against an insurance company; or they may become admissible to contradict the person making them, but not otherwise. Richelieu Co. v. Boston Marine Ins. Co., 136 U. S. 408; Cudworth v. S. C. Ins. Co., 4 Rich. L. (S. C.) 416, 55 Am. Dec. 692. (6) It was error to permit the witness Nowland to state that in his opinion the officers and crew of the steamer were competent, careful and capable. Boggs v. Lynch, 22 Mo. 563; Langston v. South. Elec. Ry. Co., 147 Mo. 457; Boettger v. Iron Co., 136 Mo. 531. (7) It was error to permit the witness Nowland to state that the wharfage charge at a great many points is based upon her registered tonnage and not upon the tonnage she actually did carry, because such statement was immaterial and prejudicial. (8) It was error to permit the witness Wyckoff, in a case where the question of overloading was an important issue, to state that if the steamer had been overloaded she would have sunk at Scanlon, and that it would have been impossible for her to run between Scanlon and Memphis, because that is a conclusion of the witness and is an invasion of the province of the jury. Gutridge v. Mo. Pac. Ry. Co., 94 Mo. 472; Boettger v. Iron Co., 136 Mo. 536. (9) The court erred in not sustaining plaintiff's motion for a new trial, on account of misconduct of counsel in their opening and closing argument to the jury. (a) It is reversible error for counsel in their argument, to persist in arguing matters to the jury, that the court has ruled were improper, and which the court has repeatedly withdrawn. McClendon v. Bank of Advance, 188 Mo. App. 428; Haake v. Milling Co., 168 Mo. App. 180; State v. Whitworth, 126 Mo. 584; Kentucky Wagon Mfg. Co. v. Duganics, 113 S. W. (Ky.) 130. (b) The withdrawal of remarks of counsel in their argument by the

court does not repair the damage done. O'Hara v. Lamb Const. Co., 197 S. W. (Mo. App.) 165.

*John M. Wood* and *McGehee, Livingston & Farabough* for respondents.

(1) The action of the court in giving, of its own motion, Instruction 10, not having been assigned as error, or called to the attention of that court, in the motion for a new trial, is not subject to review by this court. State v. Crites, 215 Mo. 91; Almond v. Modern Woodmen, 133 Mo. App. 382. (2) The court correctly instructed the jury that the burden of proof was upon the plaintiff to establish by the preponderance of the evidence the facts necessary to a verdict in its favor: (a) The pleadings did not present a case where the answer admitted the allegations of the petition, and then set up new matter in confession and avoidance. (b) Under the bond and charter-party the mere non-return of the boat did not constitute a breach of the bond. To show a breach the plaintiff had to show that she sank in such manner as not to be covered by the insurance upon her. For Nowland was not liable unless she sank in that manner. (c) The insurance was collectible unless the Shiloh sank through "gross negligence, recklessness, or wilful misconduct of the owner, master, officers or crew," or through being "unduly laden." The presumption is against these, and they must be affirmatively shown. 7 Ency. Ev. pp. 547, 548; Tidmarsh v. Washington Fire & Marine Ins. Co., 4 Mason, 439; Am. Ins. Co. v. Bryan & Maitland, 26 Wend. (N. Y.) 582; Schultz v. Pac. Ins. Co., 14 Fla. 73; Union Ins. Co. v. Smith, 124 U. S. 405; 26 Cyc. 667. (3) The court correctly charged that the defendants were not required to show definitely and certainly the exact cause of the sinking of the Shiloh. The defendants were not liable unless gross negligence, recklessness, wilful misconduct or overloading was shown. (4) The marine-protest was admissible in evidence

against the plaintiff, because the plaintiff had adopted and used it-as a part of its proofs of loss, sworn to and presented to the insurance companies. Plaintiff could not thereafter repudiate the protest. Navigation Co. v. Boston Marine Ins. Co., 136 U. S. 408, 34 Law Ed. 398; Natl. Steamship Co. v. Tugman, 143 U. S. 28, 36 L. Ed. 63. Under these circumstances the protest was admissible against the plaintiff at the instance of parties other than the insurance companies to which it was presented. Atkins v. Elwell, 45 N. Y. 745. (5) The testimony of the defendant Nowland that, so far as his observation was concerned, the officers and crew of the Shiloh were competent and careful, was admissible; if not as tending to show the exercise of care by them on the occasion of the accident, this testimony was clearly competent as bearing upon the question of Nowland's care in selecting and retaining said employees. Kenney v. Railroad Co., 70 Mo. 243; Patton v. Ry. Co., 87 Mo. 117; 8 Enc. Ev., pp. 22, 535, 538, 956; 26 Cyc. 733. (6) The argument of counsel for defendants was not misconduct entitling appellant to a new trial. Counsel stated no fact outside of the record; indulged in no abuse or vituperation; did not intentionally violate the ruling of the court. The only argument complained of consists of reference to the interest of the insurance companies in the litigation. Their interest was shown by documents on file, and the court stated that counsel might comment thereon so far as the record showed the facts. Haake v. Dulle Milling Co., 168 Mo. App. 177; Diggs v. United States, 136 C. C. A. 158; 29 Cyc. 1010.

BROWN, C.—This cause was instituted in the Circuit Court for the City of St. Louis, March 10, 1914. The petition, after alleging the corporate character of the plaintiff and defendant surety company, proceeds as follows:

"And plaintiff for cause of action states that heretofore, to-wit, on the 27th day of October, 1913, de-

fendant Edward Nowland, Jr., as principal, and defendant United States Fidelity & Guaranty Company, as surety, made, executed and delivered to plaintiff their certain bond or writing obligatory of that date, herewith filed, marked Exhibit A, and thereby acknowledged themselves indebted, and held and bound, unto plaintiff in the just and full sum of $10,000, to the payment whereof, well and truly to be made, said defendants did bind themselves and their and each of their heirs, executors, administrators, successors and assigns.

"That said bond or writing obligatory was, however, subject to certain conditions thereunder written, to the effect that whereas contemporaneously with the execution and delivery thereof, said Edward Nowland, Jr., the principal, had entered into a contract and charter-party with plaintiff, the obligee in said bond, for the use said obligee's steamer, Shiloh (a copy of which contract and charter-party was and is annexed to said bond or writing obligatory and by reference made a part thereof as fully and effectually as if therein set forth in words and figures), therefore if said principal, defendant Nowland, should and would from time to time and at all times fully do, keep, observe and perform all of the things, stipulations, agreements, provisions, undertakings and conditions by him in the said contract and charter-party agreed to be done, observed, kept and performed, and should and would pay all of the rentals in said contract and charter-party mentioned and referred to, as and when the same should become due and payable, and should and would keep and protect the said steamer Shiloh, and plaintiff as its owner, from all claims and demands of every kind, character and description, whether for repairs made, supplies furnished, wages earned or other demands upon or against said steamer or plaintiff as her owner, and should and would keep, save harmless and protect said steamer and plaintiff, as owner thereof, of and from all attorneys' fees and other expenses, and should and would at his, said defendant Nowland's expense,

protect and defend said steamer and plaintiff against all claims, judgments or suits that might be successfully made, brought or recovered against said boat or plaintiff as owner by reason of anything done or omitted to be done by said Nowland, and should and would return said steamer to plaintiff at the time or times and at the place and in the manner in said contract or charter party mentioned, free and clear of all liens, claims, demands or encumbrances whatsoever, and would in each and every other respect fully and faithfully carry out the said contract or charter-party, then said bond or obligation should be void, otherwise to remain in full force and effect.

"And plaintiff states that there have been breaches of said bond or writing obligatory, and as such breaches thereof this plaintiff assigns the following, to-wit:

"First. That upon the execution of said bond or writing, to-wit, on the 29th day of October, 1913, plaintiff delivered to said defendant Nowland, at Paducah, Kentucky, the said steamer Shiloh, and defendant received the same from plaintiff on said day and at said place, and the rent agreed to be paid by said defendant for the use of said steamer began to accrue on said day at the rate of $22.50 per day, payable to plaintiff, in accordance with the terms of the contract or charter-party aforesaid, on the first and fifteenth days of each month thereafter. That said defendant has failed and refused to pay unto this plaintiff the rent accruing, from and including December 1, 1913, to and including December 15, 1913, fifteen days, at $22.50 per day, amounting to $337.50, although payment thereof has been frequently demanded.

"Second. That the said defendant Nowland, being in charge of said steamer Shiloh on, to-wit, December 15, 1913, under the contract and charter-party hereinbefore mentioned, sank and lost said steamer or boat and has disabled himself from returning her to this plaintiff and has so announced to this plaintiff. That said defendant therefore has made it impossible for himself

to comply with said contract or charter-party and return said steamer to the plaintiff at Paducah, Kentucky. in as good order and condition as when the same was received by said defendant Nowland, excepting only such usual wear as is incident to the trade or use of said steamer.

"And plaintiff states that the said steamer Shiloh, at the time she was so sunk and lost by defendant Nowland, was reasonably worth the sum and value of $12,000, and is fully lost to this plaintiff.

"Wherefore, plaintiff prays judgment against defendants for $10,000, the penalty of the bond or writing obligatory aforesaid, together with interest and costs."

The answer, omitting introduction and prayer, is as follows:

"Defendants admit that plaintiff is, and was at the times mentioned in the petition, a corporation organized and existing under the laws of the State of Missouri; that defendant United States Fidelity & Guaranty Company is, and was at the times mentioned in the petition, a corporation organized and existing under the laws of the State of Maryland and doing business and maintaining an office in said City of St. Louis; that defendant Edward Nowland, Jr., is indebted to plaintiff in the sum of $337.50 on account of rental for the steamer Shiloh up to and including December 15, 1913, but defendants say that long before the institution of this suit, and when said rental became due, defendant Nowland tendered to plaintiff said sum of $337.50 and now tenders in court said sum in discharge of the rental due under the charter-party or contract mentioned in the petition.

"For other and further answer, defendants deny each and every allegation in said petition and in each count thereof contained, except such as are hereinbefore expressly admitted.

"For other and further answer to said petition, and especially to the second county thereof, defendants state that said steamer Shiloh, which was rented by

plaintiff under the terms of the charter-party or con-
tract mentioned in the petition, without any fault on the
part of defendant Edward Nowland, Jr., ·or the crew
of said steamer, sank and was lost on the 15th day of
December, 1913; that under the terms of said charter-
party, it was made the duty of plaintiff, during the
term for which the said steamer Shiloh was rented to
defendant Nowland, to keep the same insured against
loss from sinking, as well as from loss resulting from
other causes; that defendant Nowland, under the
terms of said charter-party, became liable only for the
rental of said steamer Shiloh for the term mentioned in
said contract, and the plaintiff assumed the liability
for loss or damage to said steamer resulting from any
cause, and said contract provides that the insurance on
said steamer against such loss should be carried by the
plaintiff in the sum of $9,000, which was the value at
which said steamer was estimated by the parties, and
which, less rent paid, was the price which defendant
Nowland was to have for said steamer in case he exer-
cised the option to purchase, provided for in said
charter-party; that when said ·steamer sank defendant
Nowland, under the terms of said lease, was relieved
of obligation to return the same to plaintiff; that
plaintiff did insure said steamer against loss resulting
from or on account of its sinking and has been paid the
amount of said insurance, which is more than the actual
value of said steamer at the time that it sank.''

The plaintiff replied by general denial. When the
trial was called the defendant, having theretofore ten-
dered $337.50 to plaintiff, deposited it in court. The
plaintiff then introduced the bond sued on and the
contract or charter-party therein mentioned and proved
the total loss of the vessel by sinking at the dock at
Memphis, Tennessee, at midnight December 14-15, 1913,
and rested. It offered no evidence of the cause of the
disaster.          .

The defendants thereupon asked the court to in-
struct the jury to find for them, which was refused by

the court and defendants excepted. The charter-party mentioned in the bond and introduced by plaintiff, by its terms chartered to the defendant Nowland the steamboat Shiloh mentioned in the petition for the term of five months from the 29th day of October, 1913, when it was delivered to him at Paducah, Kentucky, for a rental of $22.50 per day to be paid semi-monthly. It contained, among many other provisions not pertinent to these issues, the following:

"Said party of the first part agrees to pay the cost of marine insurance on said steamer during said period of five months, or during the continuance of this charter-party, if, by reason of ice, as hereinafter mentioned, the same shall continue longer than five months, which marine insurance shall be to the amount of nine thousand dollars."

That "upon the expiration of said period, the party of the second part shall return said steamer to the party of the first part, at Paducah, aforesaid, in as good order and condition, as when received by him, excepting only such usual wear as is incident to the trade.

"The party of the second part agrees that said steamer shall be operated by him as a freight and passenger packet in regular trade between Memphis, Tennessee, and Henrico, Arkansas; but said party of the second part may, if he shall so desire, extend such trade as far up the river as Cairo, or as far down the river as New Orleans, providing such steamer shall be covered by proper and adequate insurance."

It was also provided that the steamboat should be operated with a full crew of competent men and that the lessee should comply with all the laws of the United States relating to said steamer and her certificates of inspection and command her at all times when possible, and give his personal skill and judgment towards seeing that she was well and properly cared for, to the same extent as if she were his own property, and give bond with good security for the fufillment of the said charter-party in all particulars and respects; and pay all ob-

ligation and claims for which the steamer or its owner should be liable, "and that he will, in short, return said steamer to said party of the first part at Paducah, Kentucky, free and clear of all debts, claims, demands, liens or encumbrances of any kind whatsoever, made, created or resulting during the period of time the said steamer was in the possession of said party of the second part.

"Said party of the first part assumes all risks and liability to said steamer which is covered by marine and fire insurance policies upon her; also any extraordinary breakage of shafts, cylinders or machinery; also the consequences of accidental explosion or burning; but in case of loss by sinking or burning, whether such loss be total or partial, but sufficient, if partial, to render said steamer unfit for service at the time, said party of the second part shall remain with and protect said steamer to the fullest extent possible, immediately notifying said party of the first part and giving said party of the first part, or its agents or representatives, sufficient and ample time to reach the steamer and to take possession of her. In the event of any damages to said boat, rendering it unfit for service, for which party of the first part would be responsible, such as partial loss or damage by fire or sinking, the amount to be paid under this contract is to cease with the closing of the day of such accident or loss and is to continue during the period for making repairs, which repairs, party of the first part agrees to make as promptly as possible. . . . In the event of the total loss of the steamer, the charter money, or rental, shall cease on the day of such loss."

The next paragraph provides in substance that the party of the second part shall keep the steamer in as good order and condition as when received by him, ordinary wear of the trade only excepted, subject to conditions in the preceding paragraph.

An option is given in the instrument to purchase the property at $9000, with a credit of all rentals paid

and accrued. The defendant offered and introduced three policies of insurance on the steamer Shiloh in favor of plaintiff, as follows: One for $2000 issued by the Aetna Insurance Company, one for $3500 issued by the Manheim Insurance Company and one issued by the St. Paul Fire & Marine Insurance Company for $3500. In each of them was a provision that the perils which the underwriter assumed were the unavoidable danger of rivers that should cause loss or damage to the vessel or any part thereof excepting all perils, losses or misfortunes arising from or caused by gross negligence, recklessness or willful misconduct of the owner, master, officers or crew of the vessel of any loss or damage arising from or occasioned by said vessel being unduly ladened. All these policies were in force at the time of the loss.

It was also shown and admitted that about January 21, 1914, the plaintiff made to these three insurance companies the following offer in writing:

"We are willing to borrow from you the sum of $7500 and to give you our written obligation that in compliance with the provisions of the policy subrogating you to any security which we may have for the loss of the boat outside of the insurance, we will institute in our name an appropriate suit or action at law against Ed Nowland, Jr., and the United States Fidelity & Guaranty Company, surety on his bond, to recover thereon for the amount due us from Nowland for the hire of the boat, any amounts for which we may be liable for supplies furnished it and for the value of the boat itself. Should we succeed in recovering judgment and collecting thereon, we will, after first retaining the amount due us for hire and the amount for which we may be liable for supplies, repay to you the said sum of $7500, without interest, or such proportion thereof as the recovery will warrant, but in the event there should be no recovery and collection, then we shall not be liable to return any of the $7500 borrowed nor be liable for its repayment. . . .

"It is furthermore understood that the expense of the suit against Nowland and the surety company shall be borne between us in the proportion of seventy-five per cent by you and twenty-five per cent by us. You may select such counsel as you may deem proper for the institution and prosecution of the suit or, if you wish it, we will direct our counsel to look after this matter, together with such counsel as you may desire.

"Please advise us whether this settlement and method of compromising your liability is satisfactory. If it is, the $7500 must be paid within two weeks from this date; otherwise the adjustment is off."

This offer was accepted and the $7500 paid plaintiff on the terms expressed.

Defendants introduced the protest of the master (Nowland) and other officers and members of the crew of the Shiloh, made at the time of the accident, against objection and exception duly made by the plaintiff. They also introduced evidence tending to show that the steamer sank at the Memphis wharf at the time of the completion of a trip from the South, without fault of the defendant or the other officers, or the crew, and that it had not been overladen. On the other hand plaintiff introduced testimony that the sinking was due to carelessness and overloading.

At the close of all the evidence the defenants again asked an instruction in the nature of a demurrer to the evidence, which was refused. The court then gave a number of instructions at the request of plaintiff and defendants respectively. Among those given for the defendants are the following, upon which error is assigned in this appeal:

"5. If you find from the evidence that the Shiloh sank through one of the perils covered by the insurance upon her so that plaintiff was entitled to collect said insurance of the insurance companies, and if you find that the amount of said insurance was equal to or greater than the value of said steamer, then the plain-

tiff is not entitled to recover for the sinking of said steamer, even though the plaintiff has not in fact collected said insurance.

"9. In order to avoid liability for the sinking of the steamer Shiloh, the defendants are not required to show definitely and certainly what caused the sinking of said steamer.

"To the giving of which instructions for defendants, and each of them, plaintiff then and there duly excepted at the time and still excepts."

The court then of its own motion gave the following instruction, to the giving of which plaintiff duly excepted at the time.

"10. The court instructs the jury that the burden of proof is on the plaintiff to establish by the preponderance or greater weight of the evidence the facts necessary to a verdict in his favor under these instructions.

"By the terms 'burden of proof' and 'preponderance of the evidence,' the court intends no reference to the number of witnesses testifying concerning any fact, or upon any issue in the case, but simply uses those terms by way of briefly expressing the rule of law, which is that unless the evidence (as to such issue) appears in your judgment to preponderate, in respect to its credibility, in favor of the party to this action on whom the burden of proof (as to such issue) rests, then you should find against such party on said issue."

The motion for a new trial does not mention this instruction. The cause was submitted to the juryy, which returned a verdict for plaintiff for $337.50, the amount of rental due and unpaid, upon which judgment was entered. After an unsuccessful motion on the part of plaintiff for new trial it took this appeal.

There are certain questions relating to the admission of evidence to which reference will be made in the opinion.

I. This is a suit to recover $10,000, the amount of the penalty of a bond executed by the defendants to the plaintiff, conditioned for the performance of the terms of a contract technically called a charter-party, by which the Mississippi River steamer Shiloh was chartered by plaintiff to defendant Nowland for five months, to be returned to the plaintiff upon certain conditions and subject to certain contingencies to which we will presently refer. The condition of the bond was set out in the petition, and by its terms referred to the charter-party, which was thereto annexed and made a part thereof. By it the plaintiff expressly assumed all risks and liability covered by marine and fire insurance polices upon her. At that time three policies of insurance were in force insuring the plaintiff against loss of the steamer by sinking unless "caused by gross negligence, recklessness, or willful misconduct of the owner, master, officers or crew," or from "being unduly ladened." While said policies were all in force, and on the 15th day of December, 1913, the steamer was lost by sinking at the dock in Memphis, Tennessee.

Losses Covered by Insurance.

A proof of said loss, which we shall have further occasion to notice, was thereupon made by the plaintiff against the respective underwriters in the three insurance policies, and thereafter the plaintiff made a proposition in writing to each of them to the effect that they should loan plaintiff $7500, for which it would subrogate them to any security plaintiff might have for the loss of the boat outside the insurance and that it would institute in its name a suit against the defendants on this bond for the value of the boat with unpaid rentals. If successful it would repay the said $7500 without interest, otherwise it would retain the same, the said underwriters to pay seventy-five per cent of the expenses of the suit. The underwriters were also authorized to select such counsel as they might deem proper for the institution and prosecution of the suit or if they desired it would direct its own counsel to look

after the matter, together with such counsel as they might desire. This proposition was accepted by the three underwriters. The $7500 was advanced to plaintiff and this suit was brought. The insurance companies involved in this transaction are the Mannheim Insurance Company of Mannheim, Germany; the St. Paul Fire & Marine Insurance Company of St. Paul, Minnesota, and the Aetna Insurance Company of Hartford, Connecticut.

We have made this condensed statement of the pleadings and undisputed facts involved in this appeal that we may have well in mind the parties interested in and to be bound by the result of the suit, as well as the narrow issues involved.

It will be seen from the preceding paragraph that this suit was instituted, and is prosecuted and maintained, by the plaintiff, for the use and benefit of the three insurance companies, as well as for itself. They are interested in its result to the extent of $7500. If the plaintiff recovers for the loss of the boat, they get it back to the extent of the loan and plaintiff gets the remainder. The amount sued for being ten thousand dollars, the penalty of the bond, they divide the expense exactly in proportion to the interest of each.

To the extent of the interest of the underwriters the issue is clearly defined. It is whether or not the loss of the Shiloh comes within the terms of the policies by which they have obligated themselves to pay for the loss of the boat by sinking, unless such loss was caused by gross negligence, recklessness, or willful misconduct of the owner, master, officers or crew of the vessel or from its being overladened. In the absence of these excepted causes they can be entitled to nothing. The plaintiff, having expressly assumed in the charter-party all losses covered by the insurance, is also entitled to nothing, so that the issue as to all is precisely the same; that is to say, whether the loss is covered by the policies. Being reduced to still narrower limits by the terms of the bond, including the charter-party which is a part and

parcel of it, and the insurance policies which furnished, as we have seen the measure of the rights of all, the issue is reduced to the simple question whether the loss was caused by gross negligence, recklessness or willful misconduct of the master, officers or crew of the vessel or by its having been unduly ladened. It is admitted by appellant in his statement that there was evidence on both sides of this proposition. The jury were the judges of its character and weight, and the verdict and judgment thereon must stand unless something occurred in the trial either in the introduction of evidence, the instructions upon which it was submitted or the argument of counsel which might unlawfully influence them in this determination.

II. The first error of which the appellant complains is the giving to the jury by the court of its own motion, of instruction number ten. Whatever difficulty might attend the determination of this question has been obviated in the failure of the appellant to notice it in the motion for a new trial. This precludes its examination here.

Assignment.

III. The plaintiff also complains because the court gave at the request of defendant an instruction numbered nine which told the jury that "in order to avoid liability for the sinking of the steamer Shiloh, the defendants are not required to show definitely and certainly what caused the sinking of said steamer." It says that this was equivalent to instructing the jury that the burden was upon the plaintiff to show that the sinking of the vessel was caused by gross negligence of the officers or crew or overlading. Without expressing any opinion upon the question whether this construction, if couched in plain, simple and unmistakable words, would or would not be error, we are of the opinion that it is suceptible of no such construction. If the evidence showed to the entire satisfaction of the jury that the vessel was, at

Cause of Loss.

and previous to the time of the sinking, handled with skill and care and that it was not overladened, it was their duty to find that the loss was covered by the insurance. The real cause might have been unknown. It might have been the opening of a seam in her bottom or collision with a concealed obstruction which had fallen from the cargo of another ship or from the dock. The cause of the disaster was immaterial except in so far as it might tend to prove that the sinking was negligent or not. If there was no negligence in the handling of the vessel at the time, then the sinking was without negligence of the officers or crew. If the disclosure of the real cause would have shown negligence, the burden was upon plaintiff to show it. That is peculiarly true in this case where the charter-party required the lessee and master to immediately notify the plaintiff of the disaster and to remain with the vessel only until the owner could take possession.

IV. The appellant predicates error upon the action of the court in permitting Captain Nowland to testify, in substance, that the officers and crew selected by him as captain of the Shiloh to assist in the navigation of the vessel were careful and competent and

Character of Employees.

of good reputation in their nautical calling. This objection seems to be founded on a misapprehension as to the real office of this testimony under the pleadings in this case. Nowland was not only the owner of the vessel for the time being for all purposes connected with its navigation, but was its master charged with the employment of officers and crew. He was charged with gross negligence and mismanagement with respect to these duties. In short, the appellant vigorously insists that the burden is upon him to exonerate himself from this charge. Had he knowingly placed his vessel at the mercy of incompetent or reckless officers or crew without professional character or reputation and its loss had resulted therefrom, it is evident that the insurance companies could have availed

themselves of this condition of the policy to avoid liability on the ground of willful "misconduct" of the master, although it might have been only ignorance on the part of the crew. The enumeration contained in the policy of those whose negligence or misconduct would exonerate the underwriters is carefully expressed disjunctively, and defendants had the right to prove specifically that each particular person so enumerated had done his duty. The point here involved bears no analogy to an attempt to disprove negligence by proving the good reputation of the party charged. In such case, except in certain instances depending upon the nature of the act charged, the evidence is inadmissible. Here it is clearly admissible in its relation to the conduct of Nowland alone.

V. Perhaps the most important question in this case is raised upon assignment of error in the admission in evidence on behalf of the defendants of the protest of the master and crew of the Shiloh.

The marine protest is ancient in its origin and stands upon solid ground with respect to its useful purpose. It is made for the benefit of the owners of the ship and those interested in its cargo as **Marine Protest.** well as its officers and crew, and contains a statement under oath of master officers and men alike of all the circumstances of the voyage leading up to the particular accident, as well as of the accident itself, and gets its name from a statement of the notary that he protests in behalf of all against the winds, waves and perils of seas and rivers as the cause of the disaster. It will be seen that this statement, with its wealth of detail, is an important element in determining the cause of the disaster, especially to insurance companies, so that its incorporation into the proof of loss has become a universal caution if not a rule of law.

In this case the protest was incorporated in the proof of loss furnished by plaintiff to the three insur-

ance companies, and of course became the basis of the claim against them. This claim thus supported resulted in the arrangement by which the plaintiff received $7500 from the underwriting companies and undertook the prosecution, with their help, of this suit, in which the sole issue between plaintiff and defendant, raised between plaintiff and the underwriters by the proof of loss supported by the protest; that is to say, whether the circumstances of that loss, so minutely and vividly related in the protest, entitled the plaintiff to recover upon the policies the amount of its loss. It now seeks, with the $7500 in hand, to dispute the facts stated in the protest upon which it obtained it. We think that having used this instrument for its benefit in that transaction, it is now admissible for what a jury might consider it worth as evidence of its truth against plaintiff. [Richelieu Co. v. Boston Insurance Co., 136 U. S. 408, 435; Atkins v. Elwell, 45 N. Y. 753, 757.] It is no less its admission than if it had written it for the purpose for which it used it.

VI. The appellant complains that counsel for respondent were permitted to make improper statements to the jury in argument. We have searched for these in the record, and find that objections were made and exceptions saved to statements indicating the interest of the insurance companies in the issue on trial. We have already referred to that interest for the purpose of showing that these companies are not only interested in the result of this case, but are substantially parties to its prosecution. This being true and the facts being fully before the jury we see no reason why they should not be referred to by counsel. We do not think the remarks of counsel as shown in the record are reversible error.

*Remarks to Jury.*

VII. We do not think the testimony of Captain Nowland in explanation of the difference between registered tonnage, cargo space and displacement was either

immaterial or prejudicial, nor was the statement of Evidence. river steamboat men to the effect that had the steamer been so heavily ladened as to sink at the dock in Memphis it could not have passed with the same load safely up the stream to that point, and other testimony of the same character, either immaterial or prejudicial. Such things are matters of knowledge depending largely upon the experience of the witness in his calling, which alone entitled him to speak on the subject.

Finding no reversible error in the record we affirm the judgment of the circuit court.

*Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of Brown, C., is adopted as the opinion of the court; all of the judges concur; *Bond, J.,* in the result.