STATE OF MISSOURI at the relation of CHARLES TRAMILL, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and NICK T. CAVE, Judges of the Kansas City Court of Appeals.—161 S. W. (2d) 974.

Court en Banc, March 10, 1942.

· *Will H. Hargus, Meyer & Smith* and *Mosman, Rogers & Bell* for relator.

*Crouch & Crouch, William M. Kimberlin, Mitchell J. Henderson, Thos. E. Deacy, Herbert Jacob* and *Henderson, Deacy, Henderson & Swofford* for respondents.

84

■■■ DOUGLAS, J.—Certiorari to the Judges of the Kansas City Court of Appeals to review for conflict with our latest controlling decisions the opinion of that court in Tramill v. Prater (Mo. App.), 152 S. W. (2d) 684.

Tramill brought suit for personal injuries sustained as a result of being struck by a truck operated by Prater in Harrisonville. He recovered a judgment against Prater which was reversed and the cause remanded by respondents because of the erroneous injection of insurance in the trial of the case.

■■ ■■ We turn to the opinion, as we must, to find the facts and issues we may consider on the question of conflict. Out of the hearing of the jury counsel for defendant informed the court that defendant had $10,000 insurance, the amount sued for, whereupon counsel for plaintiff asked leave to amend the prayer for damages by increasing it from $10,000 to $20,000. This request occasioned the following discussion before the court as set out in respondents' opinion:

"Mr. ROGERS: Let me understand you, Mr. Crouch. Maybe we can come to an agreement. As I understand you, you say Mr. Prater has $10,000 insurance?

"Mr. CROUCH: That is right.

"Mr. ROGERS: And it is your contention that this is the first time that Mr. Prater has been brought into this case, is that what you mean?

"Mr. CROUCH: He is entitled to be present and have his attorney here.

"Mr. ROGERS: Up until this time he hasn't had anything to do with the defense of this case?

"Mr. CROUCH: He has had insurance.

"Mr. ROGERS: And the insurance company has had full control of the defense?

"Mr. CROUCH: Yes, sir.

"Mr. ROGERS: He hasn't had anything to do with that?

"Mr. CROUCH: Not since he notified the company.

"Mr. ROGERS: You don't represent him?

"Mr. CROUCH: No, sir, I do not. I represent him in another case, but not in this case, excepting as representing the liability of the insurance company."

Defendant's counsel objected to the amendment and the amendment was not made.

Thereafter, plaintiff's counsel stated his position to the court in the following language:

"Mr. ROGERS: So that my position may be clear to the Court may I state it? I expect to say to the jury that the reason why we do not intend to use Dr. Norberg and Dr. Teachnor is because they are not doctors selected by Mr. Tramill and in no sense his physicians and they are in fact not responsible to him for the facts are that while Mr. Tramill was unconscious and after he had been taken to Dr. Scott's office Mr. Crouch called Dr. Scott and Dr. Scott told him the man had a fractured skull and Mr. Crouch told him to put him in an ambulance and take him to a hospital in Kansas City and then Mr. Crouch called Mr. Sweet, then a representative of the Western Casualty Insurance Company and turned the situation over to him and he said he would take care of that and that was done.

"Mr. CROUCH: We object to that for the reason it is improper and attempting to inject immaterial and irrelevant matter into this record and attempting to prejudice the jury and if that is the rule a person couldn't do any humanitarian act when a man was unconscious without having it paraded before the jury to create an inference.

"Mr. ROGERS: I don't offer it on the ground of any admission. I am merely offering it to show why we don't produce these men who are not under our control.

"The COURT: I think you can go that far.

"Mr. CROUCH: In order that I can make my record will it now be understood that I am making my objection to this statement and

that it is overruled and that I note my exceptions and ask that the Court discharge the jury for the prejudicial statement.''

Plaintiff's counsel repeated substantially the same statement to the jury in his opening statement.

In the trial plaintiff called as his witness a Dr. J. A. Scott and on direct examination elicited the following testimony:

''Q. Did anybody communicate with you that day and tell you what to do with him? A. Yes, sir.

''Q. Who did that? A. Judge Crouch. It was several hours after he was hurt, I don't remember how long, but it was the same day.

''Q. What did he tell you to do with him? A. He told me the insurance company wanted to know the full extent of his injuries and he told me to get him in a car and take him to the hospital and an investigation by X-ray and he gave me the name of a person to leave with the hospital officials to communicate with for future treatment.

''Q. What was that name? A. Mr. Sweet.

''Q. What did he say the name of the company was? A. I don't remember now.

''Q. Was it the Western Casualty Company? A. It might have been.

''Mr. Crouch: In view of the testimony just elicited by counsel for the plaintiff, we having heretofore objected to this line of testimony and having been overruled, we again renew our objection and ask that the jury be discharged.

''The Court: Refused.

''Mr. Crouch: For the further reason that the man was unconscious and needed immediate treatment, and under any theory of humanitarian principles whatever, it was proper they should give him attention and this is now done here for the sole purpose of prejudicing this jury against the defendant.

''The Court: Overruled.

''To which ruling of the Court the defendant excepted and still excepts.''

The respondents' opinion states that there is other evidence in the record of similar purport on the question of improperly bringing before the jury the fact that defendant carried insurance against liability. However, respondents held that the statement to the jury and the testimony of Dr. Scott were each sufficient to sustain a reversal of the judgment.

Relator assigns conflict first for the reason that the discussion before the court showed that the insurance company had entirely substituted itself as party defendant in the place of the record defendant, which fact made proper his mention of insurance. He cites the case of Grindstaff v. Goldberg & Sons, 328 Mo. 72, 40 S. W. (2d) 702, which at first blush seems to sustain his position. There it is stated: ''Throughout the trial the utmost effort was exerted by plain-

tiff to show, and by defendant to conceal, the fact, if a fact, that a liability insurance company was making the defense. It seems only necessary to say, if an insurance company is the real defendant and as such is resisting plaintiff's action and conducting a defense of its own contriving, it should be compelled to put aside its disguise and stand in the open. Both the court and the jury have a right to know who are the real parties litigant; questions relating to the admissibility of evidence, the weight to be given testimony, and the credibility of witnesses are involved. [Snyder v. Wagner Elec. Mfg. Co., 284 Mo. 285, 223 S. W. 911; Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 279 S. W. 89; Schuler v. Can Co., 322 Mo. 765, 18 S. W. (2d) 42.] On the other hand, if the steel company is the defendant in reality as well as in name and as such is conducting its own defense, then the fact, if a fact, that it is protected from loss on account of the casualty involved by liability or indemnity insurance, is wholly irrelevant to the issues, and may be highly prejudicial if brought to the attention of the jury.''

This statement, when carefully analyzed, reveals that the opinion is merely following the settled law of this State. Its meaning is clear. It only decides that where an insurance company is actively participating in the case then that fact may be made known if it affects either the admissibility of evidence, the weight to be given testimony or the credibility of a witness.

The cases cited support this conclusion. In the Snyder case it was the interest of two witnesses and the weight to be given their testimony which made proper the disclosure of insurance. One of these witnesses was produced by the insurance company and the other was the paid agent of the insurance company. In the Jablonowski case the impeachment of a witness who was an insurance company doctor made it proper to bring in insurance because, as the court there said, the interest or bias of a witness with respect to the issues on trial, his relation to the parties and the state of his feelings toward them are relevant matters. In the Schuler case the question arose upon the credibility of a witness who was an adjustor in the employ of the insurance company and upon the weight to be given to his testimony. We observe that in a recent case we held that the furnishing of counsel by the insurance carrier to defend a case brought against an assured will not make admissible evidence or argument that the insurance company has an interest in the case. [Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S. W. (2d) 961.]

In Schroeder v. Rawlings, 344 Mo. 630, 127 S. W. (2d) 678, we expressed the rule by the simple observation that it is proper to inject insurance only in those cases when evidence of insurance is relevant or material to some issue involved.

The case of St. Louis & Tennessee River Packet Co. v. Nowland, 279 Mo. 500, 215 S. W. 11, also relied on by relator, is not pertinent to

our discussion because the court found that case was being prosecuted ▆▆▆▆ for the use and benefit of three insurance companies as subrogees as well as for plaintiff's benefit.

There is no conflict between respondents' opinion and our decisions on which he relies on the question first presented.

▆▆ As another ground of conflict relator asserts that he had the right to show Drs. Norberg and Teachnor were not plaintiff's doctors but had treated plaintiff at the instance of the insurance company, even though they were not witnesses in the case. Relator claims he had the right to do this in the first instance because he did not intend to call these doctors as witnesses and wished to avoid any unfavorable inference because of his failure to call them. As a matter of fact neither doctor was called by either party.

Respondents held plaintiff's conduct in so injecting the subject of insurance was not justified by any conduct of defendant, and was error.

Relator relies for conflict on the following cases: Willitts v. C., B. & Q. R. Co. (Mo.), 221 S. W. 65; Evans v. City of Trenton, 112 Mo. 390, 20 S. W. 614; McCord v. Schaff, 279 Mo. 558, 216 S. W. 320; Reyburn v. Mo. Pac. R. Co., 187 Mo. 565, 86 S. W. 174.

In none of them did we pass on the question relator now raises, namely—may plaintiff first inject insurance into a case only to avoid anticipated unfavorable inferences because of his intention not to call as his witness the doctor who treated him at the instance of the insurance company representing defendant.

We held unfavorable inferences arose in the Willitts case because plaintiff failed to call her own family doctor who had treated her, and her son-in-law also a doctor who had observed her during her incapacity; in the Evans case because we found that plaintiff's doctors were unavailable to defendant; in the other two cases because the uncalled witnesses were employees of the defendant railroads. The question now before us was not considered. Therefore, there can be no conflict on this question and respondents' ruling may not be disturbed.

We have ruled in a later case on a somewhat similar circumstance. [Hannah v. Butts, 330 Mo. 876, 51 S. W. (2d) 4.] In that case plaintiff's counsel injected insurance in his opening statement by making reference to a Mr. Morgan as "claim agent for the insurance company." We held under the circumstances of that case "there was, therefore, not the slightest excuse or justification for mentioning insurance or an insurance company . . . unless and until Morgan was put on the witness stand by the defendant; and that was never done."

Our writ was improvidently issued. It is hereby quashed. All concur.