Theodore TRIPLETT, (Plaintiff) Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY,
a Corporation, (Defendant) Appellant.

No. 31152.

St. Louis Court of Appeals.
Missouri.

Nov. 19, 1963.

. Donald W. Bird, and John D. Schneider, St. Louis, for appellant.

Donald S. Hilleary, and Harry L. Hilleary, St. Louis, for respondent.

SAM C. BLAIR, Special Judge.

A jury in the Circuit Court of the City of St. Louis awarded the plaintiff a verdict against the defendant in the sum of $12,000 for personal injuries, and the defendant appeals.

Defendant challenges the sufficiency of the evidence to support the verdict. In the outset, plaintiff argues that the sufficiency of the evidence is not open to question on this appeal, for the reason that plaintiff submitted "the same identical humanitarian theory" on "identical evidence" at a prior trial of this cause, and on appeal from the judgment defendant failed to raise any objection to the sufficiency of the evidence. Triplett v. St. Louis Public Service Co., Mo. App., 343 S.W.2d 670. Invoked is the rule that adjudication of questions presented on a former appeal constitutes the law of the case, and of a subsequent appeal, not only as to all questions directly raised and adjudged, but also as to all matters which arose prior to the first appeal and which might have been raised, but which were not raised or adjudged, unless the former ruling was palpably wrong, or unless there is substantial difference between the evidence at the two trials. Lonnecker v. Borris, Mo., 245 S.W.2d 53, 55; Wilson v. Toliver, Mo., 305 S.W.2d 423, 428; 3 Mo.D. 2, Appeal and Error, ☞1097(3), 1195(3). Decisions we have examined, where this rule of res adjudicata has been applied on a second appeal, have been rulings where the appellate court could look to the opinion on the former appeal for a statement of the evidence for a comparison with the evidence on the second appeal.

The decision on the former appeal of this case dealt only with the qualifications of the jury which tried the case. The sufficiency of the evidence was not questioned. Nothing in the opinion sheds any real light on what the facts were at that trial. Plaintiff offers us no assistance in making a comparison between the evidence presented in the first and second trials, except the bare assertion that plaintiff submitted "the same identical humanitarian theory" on "identical evidence" at both trials, and the suggestion that we get out the transcript of the first trial and see for ourselves. This we decline to do, for it is our settled judgment that this novel method of claiming res adjudicata by force of a prior appeal is wholly inadequate to present anything for our review and places no duty on us independently to search the first transcript to determine whether the evidence at the earlier trial and at this one was "identical" or substantially different. We will examine the record to

determine if the evidence on this appeal was sufficient to support the verdict.

In the vicinity of the occurrence we must examine, Grand Avenue is level and is four lanes wide from curb to curb. It runs generally north and south. Defendant maintains two sets of car tracks in the middle of Grand to accommodate both north and southbound traffic. Keokuk runs generally east and west and intersects with Grand Avenue. This intersection is the locale of the accident. Defendant's streetcar collided with the rear of plaintiff's automobile after plaintiff had come to a stop in the intersection on the northbound streetcar tracks.

Plaintiff's and defendant's theories concerning the manner in which the collision occurred differed materially.

■ We must view this record most favorably to plaintiff, allow him the benefit of every favorable and reasonable inference which the entirety of the evidence justifies, including any evidence of defendant which is not at war with plaintiff's own fundamental theory, and we must disregard all of defendant's evidence conflicting with plaintiff's theory. Steele v. Woods, Mo., 327 S.W.2d 187–191; Brooks v. Terminal Railroad Association, Mo.App., 276 S.W. 2d 600–601.

■ *Plaintiff's* theory of the facts: One of the defendant's streetcars, northbound on Grand Avenue, stopped at a safety zone south of Keokuk to take on passengers. Traveling north on Grand, plaintiff drove his automobile past the stationary streetcar and on its right side, and proceeded at 15–20 miles per hour toward Keokuk, the next intersecting street. The distance from the north end of the safety zone to Keokuk is one hundred feet. Midway between the safety zone and Keokuk plaintiff gradually angled over and onto the northbound tracks, preparing to turn left and west on Keokuk, and stopped with the rear end of his automobile on Keokuk's south boundary and its front

end in the center of Keokuk pointed northwest. The left front wheel stood on the west rail of the northbound tracks, "slightly over the track" and the left rear wheel stood, "about in the center" of the tracks. Plaintiff's reason for stopping was to allow an automobile coming south on Grand toward him to pass across Keokuk to his left and clear his way to make his left turn. The oncoming automobile was "close enough I didn't want to cut in front of" it. Plaintiff remained stopped in this position 5–10 seconds with his directional light signaling a left or west turn on Keokuk and was then struck from the rear by defendant's streetcar. He had not seen the streetcar after he passed it at the safety zone, and he had no knowledge of its movement until he heard its warning signal immediately before the collision. He had no knowledge at all of its speed. The time was 7:30 A.M., Grand Avenue was level, and the weather was clear.

*Defendant's* theory of the facts: The operator of the streetcar took on three passengers at the safety zone, collected their fares and closed the door. Then he started the streetcar moving toward Keokuk. Ninety feet from Keokuk's south boundary he attained a speed of 10 miles per hour. At that point he observed plaintiff on the streetcar's right side, traveling north and ahead of him. The front end of plaintiff's automobile was then forty-five feet south of Keokuk's south boundary. Plaintiff's automobile was fifteen feet long. Thus, its rear end was sixty feet south of Keokuk. In an instant plaintiff cut left in front of the streetcar and onto the northbound tracks. At that moment the front end of his automobile was fifteen feet from Keokuk, and his rear end thirty feet. The front end of the streetcar was forty-five feet from Keokuk, and it was traveling 10 miles per hour. Thus, between the streetcar and the rear of the automobile only fifteen feet intervened. Plaintiff continued toward Keokuk's south boundary and then suddenly stopped there on the northbound tracks with his vehicle turned northwest at

a 45 degree angle, directly in front of the streetcar. At that moment the distance intervening between the streetcar and the automobile was still fifteen feet. At once the operator applied all brakes, gave continuous repetitions of the electric bell signal, and managed to reduce his speed to 2 miles per hour, and collided with the rear end of the automobile at that speed. The operator testified that the shortest distance within which his streetcar, traveling at 10 miles per hour, could be stopped was thirty-five feet, including reaction time, under the conditions then existing. There is no contrary or other evidence in the record on this point.

Submitted solely was the humanitarian inquiry whether the defendant's streetcar could have been stopped and the collision avoided by the defendant in the exercise of ordinary care.

Our view is that substantial evidence warranted a finding of these facts by the jury: Plaintiff drove past the right side of the streetcar at a time when it was standing beside the safety zone, loading passengers, and continued on at a speed 10–15 miles per hour toward Keokuk until he finally stopped in Keokuk with his blinking directional signal and his automobile's position in the middle of the street indicating that he was waiting to turn left or west on Keokuk and that he did not intend to start and go farther forward on Grand. Precisely when the operator of the streetcar completed loading his passengers, closed the door, collected the fares and began moving north toward Keokuk, we do not know. But we do know that ninety feet from Keokuk he says he was traveling 10 miles per hour. We do know that forty-five feet from Keokuk he says he was moving at the same speed. We do know that he did not begin decelerating his 10 miles per hour speed until he was thirty feet from Keokuk and the rear end of plaintiff's automobile. Obviously, from the point ninety feet from Keokuk to the point thirty feet from Keokuk, his speed was a uniform 10 miles per

hour, and, thereafter, if he was believed, he decelerated to a final 2 miles per hour. After stopping on Keokuk, plaintiff's automobile stood unmoving for five to ten seconds. Traveling 10 miles per hour, if the streetcar had traversed the entire distance of ninety feet without decelerating, it would have covered that distance in six and a fraction seconds. Likewise if plaintiff's automobile was stopped and unmoving for six and a fraction seconds before the collision, it is obvious that the streetcar, moving a uniform 10 miles per hour to the point of collision was 90 feet to its rear at the beginning of those six and a fraction seconds. If the operator decelerated from 10 to 2 miles per hour during the last 30 feet to Keokuk's south boundary, where the rear end of plaintiff's automobile was standing, the time consumed was obviously more than six and a fraction seconds, but less than ten seconds. But this alters nothing. What is decisive is his failure to begin decelerating until he was only thirty feet from plaintiff's automobile, for he could not stop in less than thirty-five feet. The day was clear. The locale was level, and we must assume that the view of Grand Avenue ahead was unobstructed. Adequate circumstances in the record support this assumption and no defense of obstructed view is even suggested. It was the duty of the operator at that time to observe not alone plaintiff's position and his own, but to observe and be guided by the entire traffic situation, including the presence of traffic north of plaintiff on Grand, coming south toward plaintiff, and preventing him from safely beginning his left turn on Keokuk. Nothing in the situation facing the operator at this time, as we view it, justified him in assuming plaintiff would move out of his path and there were strongest reasons for him to take immediate notice that plaintiff intended to remain just where he was, and that he was not going to move his automobile until he could safely turn left on Keokuk.

Therefore, the jury could find that the operator, with a clear day and nothing ob-

structing his view, by exercising ordinary care, saw or could have seen plaintiff 90 feet ahead of him, stopped and unmoving on Keokuk, with his blinking directional signal and the position of his automobile plainly indicating that he intended to remain stopped and to wait where he was until southbound traffic cleared and permitted him to turn west on Keokuk. It became the duty of the operator within those 90 feet to act on appearances and to take timely and available measures to avoid the collision. Had he done so, the collision would have been avoided. His failure to do so caused the collision and justified the verdict. Millard v. St. Louis Public Service Company, Mo. App., 330 S.W.2d 147, 153; Cherveck v. St. Louis Public Service Co., Mo.App., 173 S.W.2d 599, 601–603; McClellan v. Kansas City Public Service Co., Mo.App., 19 S.W. 2d 902, 904; Ingino v. Metropolitan St. Ry. Co., Mo.App., 179 S.W. 771, 772.

■ We notice that defendant claims that plaintiff's case cannot be aided by defendant's evidence of the streetcar's 10 miles per hour speed for the reason that such testimony is at war with plaintiff's own fundamental theory of his case. But plaintiff offered no evidence at all with reference to the speed of the streetcar. Defendant's speed evidence was the only evidence of speed in the case. Of course, we fully recognize that a party cannot adopt evidence of his adversary favorable to him if that evidence is at war with his own fundamental theory. On the other hand, it is elementary that he may do so if adopting such evidence presents no such conflict. Our decisions long since have put this point beyond dispute. There is no war between plaintiff's fundamental theory of recovery and defendant's speed evidence. The speed evidence does not contradict or tend in any way to disprove any of the essential and ultimate facts embraced in plaintiff's fundamental theory of liability. Millard v. St. Louis Public Service Co., supra, 330 S.W.2d 151, 153; Smithers v. Barker, 341 Mo. 1017, 111 S.W.2d 47–50. For these reasons we must reject defend-

ant's argument, long since repudiated, that plaintiff cannot adopt defendant's speed evidence without adopting all of its evidence and thereby defeating his case. Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, 12–13. The decisions relied on by defendant to support its present arguments have been differentiated so frequently that any further analysis by us would be superfluous.

■ For defendant Norman Atkins testified he was a special investigator, and that after the collision he had taken moving pictures of the plaintiff pumping up a flat tire, stooping down weeding, picking weeds out of a lawn, moving his back at all times, all exertions inconsistent with plaintiff's claim of injury. Defendant did not develop whether Atkins was self-employed or employed by someone else. The foregoing is all the defendant presented to identify the witness. The moving pictures were exhibited to the jury. On cross-examination Atkins reiterated that he was a special investigator. The next questions elicited the following:

"Q. By whom are you employed? A. Public Service Company. Q. Is Public Service Company your employer? A. Well, most of my work is Public Service. Q. Who is your employer? A. Transit Casualty. Q. Transit Casualty? A. Yes, sir. Q. And they are the carrier that covers this company. Is that right? A. I assume so."

After objections at the bench and lengthy colloquy:

"Q. Now, you said you are employed by Transit Casualty Company. Is that right? A. Yes."

The defendant claims that the reference to Transit Casualty Company, Atkins' employer and defendant's insurer, was "wholly irrelevant, patently mischievous, and calculated to inflame rather than to inform" the jury, and that the court abused its discretion by refusing a mistrial. Plaintiff claims that in presenting Atkins and identi-

fying him only as a "special investigator" defendant purposely failed to reveal Atkins' employer and left the jury with the erroneous impression that he was self-employed; and that, therefore, plaintiff had the right to develop that Atkins was actually employed by Transit Casualty.

■ There was no dispute that Transit Casualty was the insurer interested in the outcome of the case. Counsel for the defendant frankly made that admission to plaintiff's counsel at the beginning of the trial, and to the court while objecting to the cross-examination we are examining. Of course, defendant was not under any compulsion, after Atkins characterized himself only as a special investigator, to develop also that he was an employee of Transit Casualty. But defendant's failure to disclose Atkins' employment, and the interest of his employer, Transit Casualty, certainly raised no barrier preventing plaintiff from developing such facts. Of course, this evidence, as we say, "injected insurance" into the case. Yet it was settled long ago that relevant and material evidence may not be excluded merely because it tends to prejudice a party. Jablonowski v. Modern Cap. Mfg. Co., 312 Mo. 173, 279 S.W. 89, 97. If evidence is competent for any purpose, its prejudicial effect cannot authorize its exclusion, for obviously all competent evidence that makes against a party's cause tends to prejudice him. Crampton v. Osburn, 356 Mo. 125, 201 S.W.2d 336, 340–341, 172 A.L.R. 344; Carlson v. Kansas City, Clay County & St. Joseph Auto Transit Co., 221 Mo.App. 537, 282 S.W. 1037, 1042. It was competent and relevant for plaintiff to show that Atkins was in the employ of Transit Casualty as an aid to the jury in determining Atkins' interest and credibility and the value of his testimony. For the purpose of Atkins' moving pictures was to destroy or at least to diminish plaintiff's claim of disablement by impugning his testimony and that of his medical and lay witnesses. In a recent ruling involving this defendant, Atkins as a witness presenting moving pictures of a plaintiff, and a cross-examination similar in all respects to the one we discuss, we ruled: "The authenticity and accuracy of the movies taken by Atkins were material to the issue of the extent and nature of the plaintiff's injuries and the damages to be awarded. They had a definite bearing upon the weight to be given by the jury to the plaintiff's medical testimony and constituted an attack upon and refutation of the testimony of plaintiff's fellow workers. The defendant urged the films upon the jury without any qualifications. Under these circumstances the plaintiff was entitled to show that Atkins, who took the films, was an employee of Transit Casualty, who was financially interested in the outcome of this litigation." Wren v. St. Louis Public Service Company, Mo.App., 355 S.W.2d 365, 368. Earlier the same imbroglio, embracing the same dramatis personae, was viewed by this court and ruled the same way in Leavitt v. St. Louis Public Service Co., Mo.App., 340 S.W.2d 131, 137–139. Some of the earlier rulings to the same effect are Jablonowski v. Modern Cap. Mfg. Co., supra, 279 S.W. 89–97; State ex rel. Tramill v. Shain, et al., 349 Mo. 82, 161 S.W.2d 974, 976; Snyder v. Wagner Electric Mfg. Co., 284 Mo. 285, 223 S.W. 911, 918.

■ The complaint that plaintiff's counsel overemphasized insurance by twice asking Atkins if he was employed by Transit Casualty does not persuade. After the question was asked and answered the first time, a long colloquy ensued at the bench. Its very length was likely to dim Atkins' answer in the jury's mind, or even to lead it to forget. In the circumstances we cannot convict plaintiff's counsel of a repetition made in bad faith, or believe he engaged in overemphasis, especially when it is remembered that he had the right in argument to the jury to argue and to reiterate that Atkins' testimony ought to be discredited because he was employed by Transit Casualty, the insurance company interested in the outcome of the trial. Wren v. St. Louis Public Service Company, supra, 355 S.W. 2d 368–369. We rule that the cross-exami-

nation complained of did not violate the defendant's rights.

 Contention is made that plaintiff's counsel, in argument to the jury, said that the operator testified that the streetcar was forty-five feet from the rear end of plaintiff's automobile when it came to a stop. It is claimed that there was no evidence to support that statement and that the operator actually testified that the streetcar was forty-five feet from the south boundary of Keokuk when plaintiff's automobile was fifteen feet south of the boundary, and that the separation between the two vehicles was then only fifteen and not forty-five feet. Plaintiff contends that his counsel did not tell the jury that the operator had so testified, but that he only argued his own conclusion from calculations he had made on the basis of testimony. Be this as it may, defendant admittedly made no objection whatever to this statement. Objections to arguments must be made in the trial court, not for the first time in the appellate court. It is the general rule that the effect of improper argument is considered on appeal to have been waived if a proper and timely objection is not made to the trial court so that it may, if the impropriety is of a character subject to correction, take appropriate action to cure the prejudicial effect. Critcher v. Rudy Fick, Inc., Mo., 315 S.W.2d 421, 428; Blanford v. St. Louis Public Service Co., Mo., 266 S.W.2d 718. We believe that the effect of the argument in this case, if it was improper, could have been cured by a corrective action on the part of the trial court. We are not confronted by a situation where a course of wrongful conduct was pursued in violation of the court's ruling, Dunn v. Terminal Railroad Association of St. Louis, Mo., 285 S.W.2d 701, or where the argument standing alone was so prejudicial as to destroy the likelihood of a fair trial, Dodd v. Missouri-Kansas-Texas R. Co., 353 Mo. 799, 184 S.W.2d 454, or where the trial court had a duty to act even though objection was not made, Critcher v. Rudy Fick, Inc., supra, or where we are called on to apply Supreme Court Rule 3.27 under the

belief that the argument was so improper and damaging to defendant's substantial rights that a manifest injustice or miscarriage of justice has resulted. In summary, defendant's failure to object in the trial court precludes review in this court for that reason and because the argument made does not disclose, and defendant does not present anything bringing it within any of the foregoing exceptions. 2A Mo.D., Appeal & Error, ☞207.

 Defendant asserts that the court erred in permitting plaintiff's counsel to make, in his closing argument, the "untrue statement that defendant had plaintiff examined by a second doctor because it didn't believe the report of the first doctor". The argument went:

"Mr. HILLEARY: If he * * * (defendant's first examining physician) was such a wonderful doctor, why did Dr. Smolik (defendant's second examining physician) make an examination after they had that report (of the first examining physician)? Apparently, they didn't believe that report.

"Mr. BIRD: I object. This plaintiff has been examined by four doctors. So defendant wanted examination by two doctors (sic) by defendant—that's the reason. Mr. Hilleary is commenting on things not in evidence. For that reason, I object.

"THE COURT: Overrule the objection".

This was the only objection defendant made, although it now argues several others it believes we ought to consider. Those objections, not having been made in the trial court, will not be reviewed here for the reasons given to support our preceding ruling on another portion of plaintiff's argument.

Viewing the argument made from all sides, we are convinced that it accomplished no more than the presentation of a non sequitur so palpable that any jury of ordi-

narily intelligent laymen would reject it automatically and immediately as a conclusion wholly illogical and unsound. Especially would this be true, we think, after defendant's counsel, in immediate response, charged in his objection, and without any contradiction by plaintiff's counsel, "This plaintiff has been examined by *four* doctors. So defendant wanted examination by two doctors". If the fallacious argument of plaintiff's counsel needed exposure, this did it, and at once.

Moreover, it has been frequently ruled that counsel is allowed wide latitude in argument and in drawing inferences, even though the inferences drawn are illogical or erroneous. Eickmann v. St. Louis Public Service Company, Mo., 323 S.W.2d 802, 810; Raymore v. Kansas City Public Service Co., Mo.App., 141 S.W.2d 103, 109. For, said the Supreme Court, in Atkinson v. United Railways Co., 286 Mo. 634, 228 S.W. 483, 484, " * * * if this court should reverse every case where a lawyer made an unsound argument or drew an unwarranted conclusion from given premises, few cases would stand the test". 27 Mo.D., Trial, ☞121(2). Actually we believe the occurrence was a trivial one, and in view of defense counsel's instant retort that plaintiff had been examined by *four* doctors, we also think that, if any prejudice resulted, it was plaintiff's counsel who was on the receiving end.

We find no reversible error and the judgment is affirmed.

ANDERSON, P. J., and PHIL H. COOK, Special Judge, concur.

RUDDY and WOLFE, JJ., not participating.