BUSCHOW LUMBER COMPANY, RESPONDENT, v. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

Kansas City Court of Appeals.   June 29, 1925.

**1.—Courts—Jurisdiction—Interstate Commerce Act Does Not Supersede Jurisdiction of State Courts Where Decision Does Not Determine Matters Calling for Administrative Power of Commission.** Interstate Commerce Act, section 22 (U. S. Comp. St., sec. 8595), preserving all existing remedies, and section 9 thereof (U. S. Comp. St., sec. 8573), do not supersede jurisdiction of State courts where decision does not determine matters calling for administrative power and discretion of Interstate Commerce Commission, or relate to subject as to which Federal courts have exclusive jurisdiction.

**2.—Pleading—Allegations as to Reconsignment Tariffs Pleaded as Defense on Theory that Rulings of Interstate Commission Were Controlling, Held Properly Stricken from Answer.** In view of proviso in Interstate Commerce Act, section 22 (U. S. Comp. St., sec. 8595), preserving all existing remedies, consignee of interstate shipment was entitled to sue in State court to recover excessive demurrage charges, and there was no error in striking from answer allegations as to reconsignment tariffs alleged as defense on theory that rulings of Interstate Commission were controlling and a part of every interstate shipment contract.

**3.—Appeal and Error—Where Second Amended Answer, Attacked by Motion to Make More Definite and Certain, Did Not Appear in Record, Objection to Ruling Sustaining Motion Was Without Merit.** Where ruling, sustaining motion to make second amended answer more definite and certain, is a matter of record, objection thereto is without merit, particularly as only answer appearing in record proper is third amended answer.

**4.—Same—Answer, Not Matter of Exception, Has no Place in Bill of Exceptions, Except as Abandoned Pleading.** Not being a matter of exception, an answer has no place in bill of exceptions, except as an abandoned pleading.

**5.—Pleading—Objection to Ruling, Sustaining Motion to Make Second Amended Answer More Definite and Certain, Waived by Filing Third Amended Answer.** Defendant, by filing third amended answer, waived objection to ruling of court sustaining motion to make second amended answer more definite and certain.

**6.—Carriers—Carrier Liable for Delay in Transportation of Goods Caused by Strike of Its Employees.** Carrier is liable for negligent or wrongful acts

of servants during course of employment, and therefore, liable for delay in transportation of goods in their charge caused by strike of carrier's employees.          ○

**7.—Same—Carrier Cannot Plead Strike as Reason for Failure to Carry Out Contract of Carriage, and Thereby Charge Shipper Demurrage and War Tax.** Carrier cannot plead strike as reason for its failure to carry out contract and diversion order, and thus give carrier right to charge shipper demurrage, and war tax for delay caused thereby, for reason that presumption of negligence arises in favor of shipper, which, in absence of legal explanation or excuse, entitles him to damages.

**8.—Appeal and Error—Where Evidence, Stricken Out, Was Subsequently Admitted, Defendant Held Not Prejudiced Thereby.** Where evidence, in support of defenses, was stricken out, and thereafter received, defendant's cause was not prejudiced by such ruling, and even if erroneous would not work reversal of judgment.

**9.—Evidence—Original Receipted Freight Bills, Properly Identified, Held Admissible as Best Evidence.** Original receipted freight bills of connecting carrier, by which goods were transported to reconsignment point after delay, **held** admissible as best evidence where properly identified.

**10.—Negligence—Allegations as to Negligence of Carrier, in Refusing to Reconsign Goods, Held Sustained by Evidence.** Allegations as to carrier's negligence, in refusing to reconsign goods on consignee's order, and to notify him of such failure, **held** sustained by the evidence.

**11.—Same—Mere Showing of Delay Without Explanation Does Not Give Rise to Presumption of Negligence.** Mere showing of delay without explanation does not give rise to presumption of negligence, but some cause for delay must be shown by plaintiff, unexplained by defendant.

**12.—Carriers—Strike of Switchmen Not Valid Reason for Refusal of Carrier to Accept Reconsignment Order.** Strike of switchmen on railroads entering city, at point where goods were ordered reconsigned, not valid reason for carrier's refusal to accept order of reconsignment.

**13.—Same—Allegations as to Excessive Demurrage and Freight Charges Held Sustained by Evidence.** Where evidence showed carrier allowed car to remain at point to which originally consigned from April 9 until May 18, without acting on reconsignment order sent April 10, and refused to deliver car at point to which finally reconsigned until certain charges, which had accrued, were paid by consignee, **held** sufficient to sustain allegations as to excessive demurrage and freight charges.

**14.—Trial Practice—Finding of Facts Should Recite All Material Facts in Detail Established by Evidence.** Finding of facts should recite all material facts in detail established by evidence and set forth no facts in support of which there is no evidence.

**15.—Same—Finding that Carrier Allowed Cars to Remain at Original Consignment Point Without Knowledge of Consignee, Held Justified by Evidence.** Where evidence showed carrier made no reply to letter of consignee returning reconsignment order rejected by carrier, with request to put diversion into effect, **held**, sufficient basis for finding that carrier allowed cars to remain at original consignment point without knowledge of consignee.

**16.—Appeal and Error—Findings of Court, Supported by Substantial Evidence, Not Disturbed on Appeal.** Special findings made by court, sitting as jury, if supported by substantial evidence, will not be disturbed on appeal.

**17.—Carriers—Deficiencies in Plaintiff's Proof as to Demurrage Overcharges Held Cured by Evidence Introduced by Carrier.** Deficiencies in

plaintiff's proof as to demurrage overcharges for period of delay, in acting on diversion order, **held** cured by carrier's introduction in evidence of bill of lading, tariffs and provisions as to reconsignment and demurrage rules.

**18.—Appeal and Error—Where no Objection Made to Finding of Court, the Same Cannot be Urged on Appeal.** Where defendant made no objection to specific finding of court at time, such objection cannot be urged on appeal.

**19.—Instructions—Refusal to Give Declaration as to Nature of Cause of Action Alleged in Petition Held Not Error.** Court's refusal to give defendants requested declaration that cause of action set out in plaintiff's petition was one **ex delicto** to recover demurrage charges, alleged to have been illegally assessed, **held** not error.

**20.—Judgment—Judgment Cannot Stand When Based on Antagonistic Findings or Conclusions of Law at Variance with Findings of Fact.** A judgment cannot stand when it is based on findings of facts which are antagonistic, inconsistent or contradictory as to material matters, or when based on conclusions of law at variance with findings of fact.

**21.—Appeal and Error—Where Judgment for Right Party it Should be Affirmed.** Where it is evident from the record judgment was for right party, it should be affirmed.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 868, n. 94; p. 869, n. 97; 4CJ, p. 107, n. 85. 86; p. 521, n. 76; p. 525, n. 9; p. 663, n. 92; p. 876, n. 78; p. 878, n. 82; p. 939, n. 22; p. 940, n. 24, 25. Carriers, 10CJ, p. 84, n. 5; p. 293, n. 98; p. 301, n. 9; p. 302, n. 10; p. 454, n. 36; p. 456; n. 67; p. 467, n. 32; p. 471, n. 94. Courts, 15CJ, p. 1155, n. 95. Evidence, 22CJ, p. 991, n. 55. Judgments, 33CJ, p. 1171, n. 47. Pleading, 31Cyc, p. 637, n. 7; p. 752, n. 63; p. 753, n. 65. Trial, 38Cyc, p. 1974, n. 23; p. 1979, n. 50; p. 1981, n. 59; p. 1986, n. 82, 83.

Appeal from the Circuit Court of Jackson County.—Hon. Nelson E. Johnson, Judge.

AFFIRMED.

*T. M. Lillard* and *Watson, Gage & Ess* for appellant.

*Grover, Tipton & Graves* for respondent.

ARNOLD, J.—This is an action to recover demurrage and penalty charges assessed on a carload of lumber.

The facts are that in March, 1920, the George Palmer Lumber Co. of La Grande Oregon, shipped a carload of lumber to plaintiff at Grand Island, Nebr.; that the car arrived at destination on or about April 9, 1920, whereupon defendant notified plaintiff of its arrival and asked for disposition; that plaintiff, on the following day, sent the original bill of lading and a reconsignment order to defendant's freight agent at Kansas City, directing the car sent to the City Lumber Co. at Detroit, Mich. On April 13, defendant returned the diversion order to plaintiff stating that defendant was unable to accept same at that time on account of railroad strikes. On April 14th, plaintiff returned to defendant the diversion order and bill of lading stating they knew no rule whereby defendant could refuse to

accept the diversion order because of a railroad strike and asking for tariff authority on the point, at the same time repeating the request that the shipment be diverted as directed. The matter rested in this situation and nothing further was heard of the shipment until the following July, when plaintiff was informed by letter that the car had arrived at Detroit on June 28th and was delivered to the Detroit Terminal on July 2, 1920.

It appears the car remained at Grand Island from April 9th until the 17th or 18th of May, 1920. Defendant assessed a demurrage penalty against said shipment as follows:

| | | |
|---|---|---|
| 4 days @ $2.00 per day ................ | $8.00 | |
| 28 days @ 5.00 per day ................. | 140.00 | |
| 38 days @ 10.00 per day ................ | 380.00 | |
| Total ................... | $528.00 | |
| War   tax         ................... | . 15.84 | |
| Grand   Total .............. | $543.84 | |

The petition alleges the amount paid was $541.84 in demurrage and excess freight charges. It is shown by the record that the amount of $543.84 was paid by the consignee at Detroit and by it charged to plaintiff. The evidence tends to show that payment of this amount was demanded by the delivering carrier at Detroit before delivery would be made. This suit was instituted to recover said sum from defendant.

The petition alleges necessary formal matters and in addition states that defendant "negligently and carelessly refused to make said reconsignment and refused to notify plaintiff that it had neglected to make said reconsignment and refused to notify plaintiff that it had neglected to make said reconsignment and overcharged the plaintiff the sum of $541.84 demurrage and excess freight charges."

The petition further states that on July 2, 1921, defendant compelled plaintiff to pay said overcharges and excess freight charges before it would deliver the aforesaid car, and that plaintiff paid the said sum under protest.

Defendant's third amended answer generally denies and for affirmative defense, in effect, admits the delay and the charges as detailed in the petition; sets forth in detail the restrictions and embargoes of the railroads entering Detroit, Mich., which caused defendant to issue its embargo in question, and further alleges that the traffic congestion and labor troubles resulted from a strike of the switchmen employed by the Detroit Terminal Railroad Company, a common carrier having lines within the city of Detroit; that said switchmen went on a strike on or before April 8, 1920, and continued up to and after May 17, 1920, and that by reason of the same the Detroit Terminal Railroad Co: was unable to receive carload shipments of lumber from

interstate common carriers entering Detroit, for delivery to the City Lumber Company.

Plaintiff filed a motion which the court sustained to strike out all of defendant's third amended answer except the general denial, upon the ground that such answer constituted no defense to the petition. A term bill of exceptions was saved to the court's said ruling. Defendant filed no additional pleadings and the cause went to trial to the court upon the issues thus made, to-wit, the petition and the general denial in the third amended answer. The finding of the court was for plaintiff in the principal sum of $541.84, and interest thereon from July 2, 1921, making a total of $649.34, and judgment therefor was entered accordingly. A motion for new trial was unavailing and defendant appeals.

In addition to proof relating to the offer and refusal of the reconsignment order, plaintiff introduced in evidence, over defendant's objection, a receipt given by the Michigan Central Railroad Co., a connecting carrier, to the City Lumber Company, showing payment of the demurrage and penalty charges in question. There was also evidence showing that plaintiff reimbursed the City Lumber Company for said payment. The court permitted defendant to introduce in evidence the provisions of the tariff forbidding the reconsignment of a shipment to a station under embargo, and also the embargoes issued by defendant against shipments to Detroit, Mich., during February, March, April and May, 1920. These embargoes were shown to have been issued by the superintendent of transportation of defendant company. The evidence showed that the charges in question were assessed at the rate specified by plaintiff's demurrage tariff filed with the Interstate Commerce Commission. It was shown that the strike during the months of April and May, 1920, was general through the United States; that the roads entering Detroit, including the Detroit Terminal, made efforts to keep traffic moving; that the Michigan Central railroad, over which the shipment here involved was routed, was less seriously affected by the strike than other roads, and that service thirty per cent normal was maintained thereon.

At the conclusion of all the evidence plaintiff presented a motion to strike out all the evidence pertaining to embargoes, which the court overruled. Thereupon defendant offered, and the court refused, a declaration of law in the nature of a demurrer to the evidence.

At the request of defendant the court declared the law to be that, under the reconsignment tariff of defendant, it had the right to refuse a shipment of lumber to a station against which there was an existing embargo, even though the embargo was occasioned by the negligence of a connecting carrier; that defendant was under no legal duty to notify plaintiff a second time of its inability to accept the diversion order or to advise it of any tariff provisions

which authorized its refusal; that the assessment of damage charges resulting from failure or refusal of a carrier to reconsign a shipment does not constitute an overcharge in demurrage, and that the burden of proof was on plaintiff to prove negligence and the fact of overcharge.

But the court refused, and of this there is complaint, to give declarations of law offered by defendant to the effect that a strike of switchmen employed by carriers entering Detroit, "which greatly reduced the ability of or rendered impossible for carriers entering Detroit, Michigan, to transport to and deliver shipments of lumber in Detroit, Michigan, was a legal excuse for defendant's refusal to accept the diversion order tendered by plaintiff, and the only duty devolving upon the defendant, after such refusal, was to notify the plaintiff of its inability to execute the diversion order and of the cause of such inability." And the court further refused to declare the law to be that plaintiff's action is one *ex delicto* to recover demurrage charges alleged to have been illegally assessed.

The court made a finding of facts offered by plaintiff and rendered judgment as above indicated.

Appellant contends the court erred in striking from the third amended answer the allegation relative to the reconsignment tariffs, because the same were a legal defense to plaintiff's cause of action. This assignment is based upon the theory that the rulings of the Interstate Commerce Commission are controlling and that they become a part of every contract in interstate shipments and have the restrictive effect of a statute; that they prescribe and limit the services and facilities in transportation which a carrier is required and permitted to offer, and may not directly or indirectly be disregarded by the carrier.

Section 9 of the Interstate Commerce Act provides:

"That any person or persons claiming to be damaged by any common carrier subject to the provisions of this act may either make complaint to the Commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any district or circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must in each case select which one of the two methods of procedure herein provided for he or they will adopt."

The proviso to section 22 declares that "nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." In construing this section, the U. S. Supreme Court, speaking through Mr. Justice Lamar, in the case of Penn. Railroad Co. v. Coal Co., 237 U. S. 121, 129, said:

"That proviso was added at the end of the statute—not to nullify other parts of the Act, or to defeat rights or remedies given by preceding sections—but to preserve all existing rights which were not inconsistent with those created by the statute. It was also intended to preserve existing remedies, such as those by which a shipper could, in a State court, recover for damages to property while in the hands of the interstate carrier; damages caused by delay in shipment; damages caused by failure to comply with its common-law duties and the like. But for this provision to section 22 it might have been claimed that, Congress having entered the field, the whole subject of liability of carrier to shippers in interstate commerce had been withdrawn from the jurisdiction of the State courts and this clause was added to indicate that the Commerce Act, in giving rights of action in Federal courts, was not intended to deprive the State courts of their general and concurrent jurisdiction. [Galveston, etc., R. R. v. Wallace, 223 U. S. 481.]"

It must be held that the Interstate Commerce Act did not supersede the jurisdiction of State courts where the decision did not determine matters calling for the administrative power and discretion of the Commission, or relate to a subject as to which the Federal courts had otherwise been exclusive. [See Abilene case, 204 U. S. 439, 446; Robinson v. Balt. & Ohio, 222 U. S. 506; 36 Stat. 551 (15); 38 Stat. 220.] The proviso was intended to preserve all existing remedies, such as those by which a shipper could, in a State court recover for damages caused by failure to comply with its common-law duties.

Plaintiff brought this suit in a State court to recover for overcharge which, under the above ruling, it had the right to do, and it follows there was no error in the ruling of the court in the respect charged. Moreover it is shown by the record that after the court sustained the motion to strike out, with respect to that part of the answer, defendant was allowed to introduce evidence in support of that part of the answer which had been stricken out. If, in fact, the ruling of the court was error, defendant would be in no position to complain. [Ward v. Dry Goods Co., 248 Mo. 367; Butterfield v. Butterfield, 195 Mo. App. 39, 40.] It is argued that had defendant accepted and acted upon the reconsignment order it would have subjected itself to the penalties of the Interstate Commerce Act. We think this position untenable under the ruling in the case of Penn. R. R. v. Puritan Coal Co., supra.

It is charged also that the court erred in sustaining plaintiff's motion to make more definite and certain the second amended answer. It may be conceded that such action of the court was either a matter of record or exception. If a matter of record, the objection is without merit, since the record fails to show any second amended answer

was filed. The only answer appearing of record in the record proper is the third amended answer. Not being a matter of exception an answer has no place and does not appear in the bill of exceptions. Of course this is not true of an abandoned pleading. In any event, defendant, by filing its third amended answer, waived any objection to the ruling of the court on this point. [Sauter v. Leveridge, 103 Mo. 615; State ex rel. v. Bank, 160 Mo. 640; Dakan v. Chase, 197 Mo. 238.]

It is urged the court erred in sustaining the motion to strike out the affirmative defense based upon the railroad strike. The general rule applicable to this question is stated in 10 C. J., 293, par. 415, where it is said: "The carrier is liable for the negligent or wrongful acts of its servants during the course of their employment, and therefore if its employees go on a strike, abandoning the performance of their duties and causing delay in the transportation of goods in their charge or control, the carrier is liable, the delay being due to the employee's wrongful acts." [See, also, 2 Hutch. on Carriers (last Ed.), p. 724, sec. 657.] The rule there announced is also the rule in this State. It is said in Read v. Railroad, 60 Mo. 199, l. c. 207: "A company will be held responsible for damages resulting from a delay to transport freight in the usual time, when it is caused by its servant's suddenly and wrongfully refusing to work. Because the employees refused to work or perform their usual employment, it will not release the company or the carrier from the responsibility of his contract. It may be his misfortune but third persons are not to suffer thereby. His liability is all the same whether he could get others to supply their places or not."

In the case at bar defendant pleads the strike as a reason for its failure to carry out the contract and diversion order, and that this failure gave defendant the right to charge the shipper demurrage and war tax for the thirty-eight days' delay. In other words, it attempts to benefit by its own wrongful or negligent act. This situation is covered in the case of Younts v. Railroad, 174 Mo. App. 482, where this court, speaking through Ellison, J., said: "If the carrier receives and fails to deliver at destination or delivers in an injured condition, he knows the cause and the shipper has no means of knowing it, and for that reason the presumption has arisen in favor of the shipper, which, in the absence of legal explanation or excuse, entitles him to judgment for damages." As stated above, evidence in support of the defenses stricken out was received by the court and defendant's cause could not therefore have been prejudiced by this ruling. Had the ruling been erroneous, defendant's cause was not injured, and the error would not work reversal. [Ward v. Dry Goods Co., 248 Mo. 367; Butterfield v. Butterfield, 195 Mo. App. 39, 40.] In the Ward case, the court said: "The striking out of the allegations as

to temporary vacation of the sidewalk did not harm defendants, for the reason that all the defendant's evidence on that subject was admitted by the trial court."

It is insisted the court erred in admitting in evidence plaintiff's exhibits 3 and 4, consisting of receipted freight bills of the Michigan Central Railroad, the objection being that they were not properly identified. We think this contention without merit. The record shows that the receipted bills were identified by witness F. J. Buschow as the receipted originals and were the ones paid by plaintiff. The receipted bills, of course, are the best evidence when properly identified. There was no error in their admission in evidence.

It is urged there was no evidence to support the judgment of the court and no evidence to sustain the charges of negligence in the petition. The petition contains two charges of negligence, to-wit, (a) that defendant negligently and carelessly refused to make said reconsignment, and (b) refused to notify plaintiff that it had neglected to make said reconsignment . . ." We have already discussed this phase of the case and have determined the point against defendant's contention.

Defendant seems to rely largely upon the ruling of this court in Burgher v. Railway, 217 S. W. 854, to the effect that an interstate shipment is governed by the Federal laws, and the burden of proving negligence is on plaintiff. A mere showing of delay without explanation does not give rise to a presumption of negligence. Some cause for the delay must be shown by plaintiff unexplained by defendant. In the facts in the case at bar we see no violation of the rule just announced. Herein the proof of negligent delay was substantial. We have held herein that such explanation is not sufficient to relieve the carrier from liability.

Moreover, it seems to have been defendant's position that the strike of the switchmen on the railroads entering Detroit reduced defendant's ability to transport lumber to that point. That this may be accepted as a valid reason for refusing to accept the reconsignment can hardly be successfully maintained. We rule against defendant on this point.

Defendant urges there was no evidence to sustain the allegation that defendant "overcharged plaintiff the sum of $541.84 as demurrage and excess freight charges." On this point the court found that defendant permitted said car to remain at Grand Island, Nebr., refused to deliver said car until certain charges had accrued and been paid by plaintiff. There was ample evidence to support this finding by the court sitting as a jury.

It must be held that if plaintiff was required, through the negligence of defendant to pay any sum in excess of the tariff rates, it was an overcharge. There was substantial evidence in support of

the allegation and the finding of the court in this respect was not error.

Under point 5, defendant urges that a finding of facts should recite all material facts in detail which are established by the evidence, and should set forth no facts in support of which there is no evidence. This is a clear statement of the rule relative to which there seems to be no controversy. It is insisted that the finding of facts herein states "the defendant allowed said cars to remain at Grand Island, Neb., without knowledge of the plaintiff," which was error because there was no evidence to prove this fact.

This position is not tenable. There was substantial evidence to the effect that on April 14th plaintiff returned the reconsignment to defendant, saying: "We are returning the B/1 herewith and will ask you to put this diversion into effect, forwarding the car as rapidly as the exigencies of the situation will permit." No reply was made to this letter. This circumstance was accepted by the court as sufficient basis for the finding of the facts of which defendant complains. The special findings made by the court sitting as a jury, if supported by substantial evidence, will not be disturbed on appeal, if the conclusions are correct. [City of DeSoto v. Insurance Co., 102 Mo. App. 1, 4.]

A charge of error is based upon the action of the court in refusing defendant's declaration of law No. 9, as follows: "The court declares the law to be that the cause of action set out in plaintiff's petition is one in *ex delicto* to recover demurrage charges alleged to have been illegally assessed." The language of the petition is: "Plaintiff further states that the defendant . . . overcharged the plaintiff in the sum of ——." "The defendant introduced in evidence the bill of lading, the tariffs and provisions as to reconsignment and demurrage rules. Thus was cured any deficiency in plaintiff's proof in this respect. On this proof the court found that defendant allowed the car to remain in Grand Island and refused to make delivery until the overcharge and demurrage were paid. Defendant made no objection at the time to this specific finding and such objection may not now be urged. The refusal of the declaration offered by defendant was not error.

Finally it is urged that the judgment rendered is inconsistent with the declarations of law given by the court. It is pointed out that the court declared the law to be to the effect that defendant, under its tariff, had the right to refuse to reconsign the shipment to Detroit; that the demurrage charges, assessed by reason of appellant's refusal to accept the reconsignment order, did not constitute an overcharge, and that reimbursement of the City Lumber Company by plaintiff was not a proximate result of the assessment of the demurrage charges. It is argued the judgment of the court is not in conformity

with these facts so found, and that the judgment and findings of fact are antagonistic and in violation of the general rule of law declared in 38 Cyc. 1986, to the effect that:

"A judgment cannot stand when it is based on findings of fact which are antagnoistic, inconsistent or contradictory as to material matters, or when it is based on conclusions of law which are at variance with the findings of fact. . . ."

This general rule is not disputed. We need not pass upon this point, however, for the reason that from what we have said it is evident the judgment was for the right party and should be affirmed. It is so ordered. *Bland, J.,* concurs; *Trimble, P. J.,* absent.