**Frank HAYNAM and Sondra Haynam, Plaintiffs–Respondents,**

v.

**LACLEDE ELECTRIC COOPERATIVE, INC., Defendant–Appellant.**

**No. 18522.**

Missouri Court of Appeals, Southern District, Division One.

March 24, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 15, 1994.

Transferred to Supreme Court May 26, 1994.

Case Retransferred Nov. 22, 1994.

Court of Appeals Opinion Readopted Nov. 30, 1994.

**150**

David W. Ansley, Michael P. Mergen, Hall, Ansley, Carmichael & Gardner, Springfield, for defendant-appellant.

Cynthia O. MacPherson, Mountain Grove, for plaintiffs-respondents.

SHRUM, Judge.

(On March 24, 1994, this court issued an opinion affirming the judgment of the trial court. On May 26, 1994, by order of the Missouri Supreme Court, this cause was transferred to that court. On November 22, 1994, the supreme court entered an order retransferring the cause to this court. The original opinion of this court, which follows, is now readopted and reissued.)

This appeal is a continuation of litigation reported in *Haynam v. Laclede Elec. Coop.*, 827 S.W.2d 200 (Mo.banc 1992) (*Haynam I* ). In *Haynam I* the supreme court reversed jury awards of $945 in actual damages and $30,000 in punitive damages based on the claim of dairy farmers Frank and Sondra Haynam that Laclede Electric Cooperative wrongfully terminated their electrical service. The supreme court reversed because of the trial court's erroneous admission of evidence of the plaintiffs' reputations as "honest and truthful people." *Id.* at 208.

In *Haynam I*, the plaintiffs based their claim for actual damages on "intentional conduct that was 'malicious, wanton, and willful. . . .' " *Id.* at 204. On retrial, the plaintiffs submitted their case for actual damages on a negligence theory. As in *Haynam I*, the harm they alleged was pecuniary only; it included disputed charges for electrical service, disconnection and reconnection fees, and an additional security deposit. The jury found for the plaintiffs and awarded them

$1,063.56 in actual damages and $50,000 in punitive damages.

On appeal, Laclede challenges the submissibility of the plaintiffs' punitive damages claim, contends the verdict directing instructions for actual and punitive damages were prejudicially erroneous, and asserts the trial court erred in disallowing its comparative fault defense. As we discuss Laclede's various claims of trial court error, we set out relevant facts. We affirm the judgment of the trial court.

## DISCUSSION AND DECISION

*Submissibility of Plaintiffs' Punitive Damages Claim*

In its first point on appeal, Laclede contends the plaintiffs failed to make a submissible case for punitive damages and, to support that claim, offers three reasons, which we redesignate for convenient subsequent reference as subpoints (A), (B), and (C). We paraphrase for clarity: (A) the plaintiffs' evidence, as a matter of law, was insufficient to support recovery of punitive damages; (B) the plaintiffs pled and proved nothing more than negligent conduct to support their punitive damages claim; (C) the plaintiffs' harm was pecuniary only and there was no evidence that Laclede's conduct created a danger to their safety or a risk of bodily harm. We consider Laclede's arguments in the order stated above.

■ Essential to an award of punitive damages is evidence of the defendant's culpable mental state. In *Burnett v. Griffith*, 769 S.W.2d 780 (Mo. banc 1989), a case involving an intentional tort claim, the supreme court stated:

"Justified as punishment and intended to make an example of a defendant on account of his outrageous conduct, punitive damages require a showing of a culpable mental state on the part of the defendant, either by a wanton, willful or outrageous act or reckless disregard (from which evil motive is inferred) for an act's consequences. 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others.' Restatement (Second) of Torts,

§ 908(2) (1979).[1] It is not so much the commission of the intentional tort as the conduct or motives—the defendant's state of mind—which prompted its commission that form the basis for a punitive damage award. W. Prosser & W. Keeton, Prosser and Keeton on Torts Chap. 1, § 2, 9 (1984)...."

769 S.W.2d at 787[10] (footnote omitted).

■ The allowability of punitive damages is not limited to intentional tort actions. In *Sharp v. Robberson*, 495 S.W.2d 394 (Mo. banc 1973), our supreme court held that a plaintiff who recovered actual damages on a negligence theory also could recover punitive damages "if the evidence supported the submission under the substantive law," and the jury was properly instructed. *Id.* at 399[1, 2].

> More recently, the supreme court said: "*Sharp* confirmed the cases, not great in number but dating back many years, which hold that a claim for punitive damages is not inconsistent with a claim for negligence, so long as the evidence contains factual support for an award of punitive damages and the jury is properly instructed. A punitive award is not appropriate in every negligence case. Facts in addition to those relied on in the negligence submission must be established in order to recover punitive damages."

*Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 74 (Mo. banc 1990) (footnote omitted). The question becomes, *What* facts in addition to those relied on in the negligence submission must be established? The evidence at the second trial on the issue of Laclede's state of mind was essentially the same as the evidence reported in *Haynam I*, 827 S.W.2d at 202–04. Thus on this appeal we conclude, as did the supreme court in *Haynam I*, that the plaintiffs presented evidence of Laclede's culpable mental state that satisfied the *Burnett* standard.[2]

■ In its argument under Point I(B), Laclede cites *Menaugh*, 799 S.W.2d at 74, and *Litchfield v. May Dept. Stores*, 845 S.W.2d 596, 599[9] (Mo.App.1992), for the proposition that a plaintiff seeking punitive damages in a negligence action "must show conduct more egregious than that on which the claim of negligence is based." However, Laclede offers no support for its argument that a plaintiff always must prove conduct different from and in addition to the conduct that proves the negligence in order to make a submissible case for punitive damages. As the *Litchfield* court (relying on the discussion of scienter in *Menaugh*, 799 S.W.2d at 74) pointed out, a plaintiff may meet the burden of showing the defendant's conduct is "more egregious than that on which the claim of negligence is based" by presenting evidence of the defendant's culpable mental state. 845 S.W.2d at 599[10]. The plaintiffs made this showing, and their punitive damages verdict directing instruction, discussed in detail elsewhere in this opinion, submitted evidence of Laclede's culpable mental state.

■ Laclede's argument under Point I(C) is that punitive damages were not recoverable by the plaintiffs because they suffered only pecuniary harm and there was no evidence that Laclede's conduct created a danger to their safety or a risk of bodily harm. For this argument, Laclede relies on *Hoover's Dairy, Inc. v. Mid–America Dairymen*,

---

1. Our references throughout this opinion to the Restatement (Second) of Torts § 908 are to the version adopted in 1977 and published in 1979. All other references to the Restatement (Second) of Torts are to the version adopted in 1964 and published in 1965.

2. In its briefs and at oral argument, Laclede does not identify in what way the evidence, in *Haynam I* and at the second trial, differ with respect to Laclede's mental state. Relying on a portion of *Triplett v. St. Louis Public Service Co.*, 372 S.W.2d 515, 516 (Mo.App.1963), Laclede claims it was the burden of the plaintiffs to show that the evidence at each trial was identical. Omitted from Laclede's quotation from *Triplett* is this passage:

> "The decision on the former appeal of this case dealt only with the qualifications of the jury which tried the case. The sufficiency of the evidence was not questioned. Nothing in the opinion sheds any real light on what the facts were at that trial."

372 S.W.2d at 516. One issue in *Haynam I* was the sufficiency of the evidence, and the supreme court's opinion sheds considerable light on what the facts were concerning that issue. Thus Laclede's reliance on *Triplett* is misplaced.

In fairness to Laclede, we point out that much of the Point I argument in its reply brief was in response to the plaintiffs' law of the case argument, which we have rejected. Our ruling on Point I(A) is nothing more than an application of the principle of *stare decisis*.

700 S.W.2d 426 (Mo. banc 1985); *May v. AOG Holding Corp.*, 810 S.W.2d 655, 661 (Mo.App.1991); and *Manzo v. Metro North State Bank*, 759 S.W.2d 77 (Mo.App.1988).

■ Before we demonstrate that the holdings in these three cases do not support Laclede's position, we must digress to a discussion of terminology. Confusion about terminology is manifest in Laclede's Point I(C) and the argument thereunder where Laclede appears to equate the terms *danger to safety, injury, bodily injury, physical harm,* and *bodily harm.* The Restatement (Second) of Torts uses the word *injury* "to denote the invasion of any legally protected interest of another." § 7(1); *Porter v. Crawford & Co.,* 611 S.W.2d 265, 271 (Mo.App.1980). *Harm* denotes "the existence of loss or detriment in fact of any kind to a person resulting from any cause." § 7(2); *Porter,* 611 S.W.2d at 271. The comments to Restatement § 7 elaborate on the distinctions between the interrelated and often overlapping concepts of *injury* and *harm.* The term *physical harm,* defined in Restatement § 7(3) as "the physical impairment of the human body, or of land or chattels," includes, but is not limited to, bodily harm, which is defined in Restatement § 15 as "any physical impairment of the condition of another's body, or physical pain or illness." In this opinion, we adhere to these Restatement definitions. In this case there was no evidence of threatened or accomplished physical harm in any of its manifestations under the Restatement definitions. The harm was purely pecuniary.

■ The Restatement (Second) of Torts does not separately define the words *safety* and *rights.* The comments to Restatement § 1, which defines *interest* as "the object of any human desire," suggest the terms *rights* and *legally protected interests* are synonymous. Thus the language of *Burnett,* 769 S.W.2d at 787[10], and Restatement § 908(2), that a plaintiff may recover punitive damages if the defendant's conduct is "outrageous, because of the defendant's evil motive or reckless indifference to the *rights* of others (our emphasis)," provides a broad compass of

protection, not limited to protection from bodily harm as Laclede contends.

We return to Laclede's cited authorities. In *Hoover's Dairy,* the court held the plaintiff did not make a submissible case for punitive damages because there was no evidence the defendants had the culpable mental state required for their negligent conduct to rise to the level of recklessness. 700 S.W.2d at 436[19] and 437[22].

In *Manzo,* the court's discussion of punitive damages also centered on the defendant's mental state. The court stated that because there was no evidence that the defendant bank's employee knew that the plaintiff's signature on a loan extension agreement was forged, then the employee's notarization of the signature, although negligent, was not willful or wanton, and thus it was error for the trial court to submit the plaintiff's claim for punitive damages to the jury. 759 S.W.2d at 83[6–7].[3]

In *May,* the defendant challenged a punitive damages award in a point relied on that framed the issue thus: " '[T]here was insufficient evidence to show the required mental state of defendant's employee at the time of the acts shown in Instruction 11 [the plaintiffs' punitive damages verdict directing instruction]' " and "Instruction 11 failed to provide to the jury the objective standard that [the defendant's] conduct must be 'outrageous' because of [the defendant's] evil motive or reckless indifference to the rights of others." 810 S.W.2d at 657. This court held the evidence was insufficient to submit the issue of punitive damages to the jury. *Id.* at 663.

In *Hoover's Dairy, Manzo,* and *May,* the submissibility of the punitive damages claims turned on the evidence of the respective defendants' mental states, not the nature of the harm, actual or threatened, as Laclede contends. *May* is not controlling for the additional reason that, in that case, bodily harm actually occurred.

Comment b to Restatement (Second) of Torts § 908 refers to the conduct described in § 500 as an example of the culpable mental state that will support an award of puni-

---

**3.** We note that the discussion of punitive damages in *Manzo* is *obiter dicta* because of the

court's determination that the plaintiff did not make a submissible case for actual damages.

tive damages.[4] Comment b to § 908 states, in part, "Reckless indifference to the rights of others and conscious action in deliberate disregard of them (see § 500) may provide the necessary state of mind to justify punitive damages." *Hoover's Dairy,* 700 S.W.2d at 435, and several other opinions, including *Menaugh,* 799 S.W.2d at 74, refer to § 500 to illustrate the requisite mental element for recovery of punitive damages. In contrast, § 500 was directly applicable in *May,* a case in which the plaintiff alleged not only a culpable mental state for punitive damages but also bodily harm.

In its challenge to the submissibility of the plaintiffs' punitive damages claim, Laclede relies in part on MAI 10.07 (1991), which was drafted in response to *Menaugh,* 799 S.W.2d 71, as a modification of MAI 10.02 (1983). Laclede appears to argue that the phrase "for the safety of others" in Paragraph Third of MAI 10.07[5] and the instruction's Notes on Use establish that a claim for punitive damages is submissible "only where the actor's conduct creates an unreasonable risk of *bodily harm or danger to the safety of others*" (Laclede's emphasis).

Instructions are intended to inform the jury of the law, and pattern instructions are drafted to be a correct and complete statement of the law. "1963 Report to Missouri Supreme Court." *Missouri Approved Jury Instructions* at xxv (West 1991). However, the approved instructions are not all encompassing, and there is not an MAI appropriate to every factual setting. *Menaugh,* 799 S.W.2d at 75; *Karnes v. Ray,* 809 S.W.2d 738, 740[3] (Mo.App.1991). "There are times when a literal application of MAI will not produce a legally sufficient submission so that counsel will find it necessary to modify the MAI formulation." *Menaugh,* 799 S.W.2d at 75. We reject Laclede's argument that the submissibility of the plaintiffs' punitive damages claim is to be determined by a literal application of MAI 10.07 in unmodified form. Laclede's complaints about the plaintiffs' modification of MAI 10.07 are the subject of a separate point on appeal.

In its reply brief and at oral argument, Laclede invites us to "pick up on the cue" in Judge Holstein's concurring opinion in *Kansas City v. Keene Corp.,* 855 S.W.2d 360 (Mo. banc 1993), in which he said, "A compelling argument can be made that punitive damages should not be permitted where there is no personal injury or illness and the claim arises solely because of a latent defect in a product or out of a breach of warranty." *Id.* at 377. Laclede apparently would have us rule that punitive damages are not allowable in this case because bodily harm did not result.

In Missouri, the functions of punitive damages and actual damages are different. "Punitive damages . . . are awarded for the purpose of inflicting punishment for wrongdoing, and as an example and deterrent to similar conduct. They are not awarded as compensation to plaintiff for the injuries or loss sustained by him. Compensation for actual injuries or loss is in the form of actual damages." *Chappell v. City of Springfield,* 423 S.W.2d 810, 812[5–6] (Mo.1968). To rule as Laclede invites us to rule, namely, that the submissibility of a punitive damages claim is dependent on the harm that actually occurs

*See, e.g., Frederic v. O'Keefe,* 820 S.W.2d 107, 109[4] (Mo.App.1991); *DeSalme v. Union Electric Light & Power Co.,* 232 Mo.App. 245, 102 S.W.2d 779, 783–84[10] (1937).

4. Restatement (Second) of Torts § 500 provides: "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

5. MAI 10.07 (1991) states: "If you find in favor of plaintiff under Instruction Number ____ (*here insert number of plaintiff's verdict directing instruction based on negligence*), and if you believe that:
"First, (*here describe the act or omission which justifies the submission of punitive damages*), and
"Second, defendant knew or had information from which defendant, in the exercise of ordinary care, should have known that such conduct created a high degree of probability of injury, and
"Third, defendant thereby showed complete indifference to or conscious disregard for the safety of others,
"then in addition to any damages to which you find plaintiff entitled under Instruction Number ____ (*here insert number of plaintiff's damage instruction*) you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct."

rather than the defendant's mental state, would blur—perhaps eradicate—the clear demarcation between the functions of punitive and compensatory damages. If such a fundamental shift in this state's policies underlying awards of punitive and compensatory damages is to be accomplished judicially, then such action is better left to the supreme court.

This case is not the first in which an appellate court of this state has permitted an award of punitive damages to stand or reinstated punitive damages claims in negligence actions that involved only pecuniary harm. *See O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 69–70 (Mo. banc 1989) (Plaintiff purchased used motor vehicle he later learned had been damaged in a flood. The physical harm to the vehicle occurred prior to the purchase; plaintiff's harm was pecuniary.); *Arana v. Koerner*, 735 S.W.2d 729, 736–37 (Mo.App. 1987) (Physician alleged his former attorneys negligently settled a lawsuit against him without his consent. The court of appeals concluded the attorneys knew or had reason to know the settlement "was highly likely to result in injury to Arana's reputation.");[6] *Stephens v. Lever Bros. Co.*, 155 S.W.2d 540, 541, 543[10, 13] (Mo.App.1941) (Plaintiff alleged his former employer's negligent failure to provide a service letter resulted in "lost opportunity to secure worthwhile employment.");[7] and *DeSalme*, 102 S.W.2d 779.

In *DeSalme*, the defendant Union Electric Light and Power Company terminated electric service to the plaintiffs based on the report of its meter reader that the plaintiffs had attached a "jumper" to their meter to prevent registration of the current they were using. 102 S.W.2d at 780. The appellate court reversed an award of actual and punitive damages resulting from the "wrongful discontinuance of electric service," *Id.* at 780, because an improper measure of damages was submitted to the jury. *Id.* at 782. The plaintiffs had alleged only pecuniary harm. *Id.* at 781. In remanding to the trial court for retrial, the court of appeals noted that the evidence before it was sufficient to make a case for punitive damages. *Id.* at 783. We note a remarkable similarity in the *DeSalme* facts supporting punitive damages and the facts in the case before us. We find nothing in *DeSalme* to support Laclede's claim that the actual damages submission in that case was based on an intentional tort theory.

We reject Laclede's Point I.

*Punitive Damages Verdict Directing Instruction*

In Point III Laclede fires a volley of charges against Instruction 9, the plaintiffs' punitive damages verdict directing instruction, which was based on MAI 10.07.[8] In

---

**6.** We recognize a distinction between the pecuniary harm suffered by the plaintiffs in the case before us and the possibility of harm to the plaintiff's professional reputation in *Arana*. However, the *Arana* case does contradict Laclede's claim that no Missouri appellate court has permitted an award of punitive damages in a negligence case that did not involve some form of physical harm.

**7.** Unlike the current service letter statute, § 290.140, RSMo 1986, the statute in effect at the time of the plaintiff's claim in *Stephens*, § 5064, RSMo 1939, made no provision for punitive damages.

**8.** We reproduce the plaintiffs' Instruction 9:
"If you find in favor of plaintiffs under Instruction Number 6, and if you believe that:
"First, either:
defendant terminated plaintiffs' electrical services for non-payment of an electric bill which plaintiffs did not owe, or
defendant agreed plaintiffs had until the end of May to pay the billing and defendant terminated plaintiffs' electrical services without allowing plaintiffs the time agreed upon to pay the disputed billing, or
defendant terminated plaintiffs' electrical services without complying with its Bylaw Section setting forth procedures for termination of a member's electrical service, or
defendant represented that plaintiffs would receive a personal visit prior to termination and defendant terminated plaintiffs' electrical services without complying with its representations to plaintiffs, and
"Second, defendant in any one or more of the respects submitted in Paragraph First, knew or had information from which defendant, in the exercise of ordinary care, should have known that such conduct created a high degree of probability of injury, and
"Third, defendant thereby showed complete indifference to or conscious disregard for the rights of others,
"then in addition to any damages to which you find plaintiffs entitled under Instruction Number 6 [sic] you may award plaintiffs an additional amount as punitive damages in such sum as you believe will serve to punish defendant and to deter defendant and others from like conduct."

subpoint (A) Laclede claims the substitution of "rights" for "safety" in Paragraph Third of Instruction 9 was an erroneous and prejudicial deviation from MAI 10.07 that "allowed the jury to erroneously assume that Missouri law allowed the imposition of punitive damages in this negligence case in which there was no allegation or proof of bodily injury or a probability of bodily injury or that [Laclede's] conduct was in disregard for the safety of others...."

This claim of error flows from Laclede's Point I argument that punitive damages were not allowable because of the absence of evidence that Laclede's conduct created a danger to the plaintiffs' safety or a risk of bodily harm. We likewise reject the argument here.

■ If a Missouri Approved Instruction is applicable to a particular case, its use is mandatory. Rule 70.02(b); *Karnes,* 809 S.W.2d at 740[2]. However, approved instructions are not all encompassing, and there is not an MAI appropriate to every factual setting. *Menaugh,* 799 S.W.2d at 75; *Karnes,* 809 S.W.2d at 740[3]. Rule 70 contemplates the frequent situations in which no MAI is applicable and provides for modification of an existing MAI or drafting of a "not-in-MAI" instruction. Rule 70.02(e). The test of a modified MAI or not-in-MAI instruction is whether it follows the substantive law and can be readily understood by the jury. *Karnes,* 809 S.W.2d at 740[4].

■ In the case before us, the plaintiffs offered no evidence that Laclede's conduct "showed complete indifference to or conscious disregard for the safety of others"; thus the plaintiffs were required to modify MAI 10.07 to follow the substantive law. They did so by substituting for *safety* the word *rights,* drawn directly from *Burnett,* 769 S.W.2d at 787[10] and 789[12], and the Restatement (Second) of Torts § 908(2). We reject Laclede's Point III(A).

■ In Point III(B) Laclede relies on *Burnett,* 769 S.W.2d at 789; *Haynam I,* 827 S.W.2d at 204, and *DeLong v. Osage Valley*

*Elec. Coop. Ass'n.,* 716 S.W.2d 320 (Mo.App. 1986), for its assertion that Instruction 9 stated a standard of conduct "lower than required for submitting punitive damages in this case...." The gist of Laclede's argument is that the "complete indifference" or "conscious disregard" of MAI 10.07 is a "lower standard" than the "reckless indifference," which is paired disjunctively with "evil motive" in *Burnett,* 769 S.W.2d at 789[12], and Restatement (Second) of Torts § 908(2). However, Laclede develops no argument to support its "lower standard" assertion. Thus we deem the assertion abandoned. *See Hayes v. Hatfield,* 758 S.W.2d 470, 474[7] (Mo.App.1988), in which the court held the appellants abandoned their argument where they set forth principles of law with citation to authority and made reference to the record but developed no argument to support their assertion. *See also Bopp v. Spainhower,* 519 S.W.2d 281, 286[7] (Mo. banc 1975). We reject Point III(B).[9]

In Point III(C) Laclede challenges Instruction 9 on the ground that it hypothesized only negligent conduct and failed to submit "additional allegations of egregious conduct over and above the conduct described as negligent in order to justify the imposition of punitive damages...." Point III(C) is nothing more than an argument presented in Point I but recast here as an allegation of instructional error. For the reasons we rejected the argument under Point I, we reject it here. Moreover, Paragraphs Second and Third of Instruction 9 hypothesized Laclede's culpable mental state, thereby permitting the jury to find Laclede's conduct was, in the words of the *Litchfield* opinion, "more egregious than that on which the claim of negligence [was] based." 845 S.W.2d at 599[9]. We reject Point III(C).

In Point III(D), Laclede charges that the reference in Paragraph Second of Instruction 9 to a "high degree of probability of injury" erroneously "assumed the existence of bodily injury," of which there was no evidence. As it did in Point I, Laclede confuses terminology. Moreover, the argument wrongly

---

**9.** We question the merits of Laclede's "lower standard" assertion. Without deciding, it appears "complete indifference" or "conscious disregard" creates a greater burden for a plaintiff than "reckless indifference." If the standard that was submitted to the jury is higher than the one submitted in *Haynam I,* we believe the evidence met that standard.

equates a probability of injury with its actual occurrence. Point III(D) has no merit.

We reject Point III.

*Compensatory Damages Verdict Directing Instruction*

In Point IV, Laclede challenges the verdict directing instruction for compensatory damages, Instruction 6, which is set out in the margin.[10] Laclede posits error in two of the negligent conduct submissions: (1) that termination resulted from non-payment of a bill that the plaintiffs did not owe and (2) that termination violated Laclede's bylaws.

■ In determining if an instruction is supported by the evidence, an appellate court must view the evidence in the light most favorable to the party offering the instruction, giving that party the benefit of all favorable inferences reasonably drawn therefrom and disregarding evidence to the contrary. *Manufacturers American Bank v. Stamatis,* 719 S.W.2d 64, 67[1] (Mo.App.1986).

Laclede's argument concerning the submission of the first challenged hypothesis is two-fold: the bill for electric power use was based on meter readings supplied by the plaintiffs, and there was no evidence the meter was defective.

■ The evidence supports the first submission.[11] Both plaintiffs testified they never misread the meter and never misreported their readings. The $653.05 bill was for 13,299 kilowatt hours, more than five times their normal usage before and after the March 1986 reading, and more than their highest previous monthly usage, which occurred when extremely cold weather required them to use electric space heaters in their barn and home. After the disconnection and reconnection, Laclede periodically monitored the plaintiffs' meter readings.

At Laclede's suggestion, the plaintiffs hired at their expense an electrician recommended by a Laclede employee. Following a thorough inspection of the wiring and appliances at the plaintiffs' farm, the electrician told Frank Haynam there was "absolutely nothing within [the plaintiffs'] operation that would ... explain a usage of that size." The electrician testified that "the whole farm— the dairy barn, the garage, the house" had been rewired recently. He checked "everything," including the well and all appliances to ensure they would "shut off" when they were supposed to do so. As a result of his inspection he found nothing at the farm that was "electrically impaired" and gave the entire operation a "total clean bill of health."

Laclede's area foreman, who admitted he was not qualified to test meters, performed a "field" or "visual" inspection of the plaintiffs' meter and concluded it was operating properly. The meter was not laboratory tested or otherwise checked by a meter technician. Laclede's office manager admitted it was possible for the meter to malfunction.

The main thrust of Laclede's evidence was that the plaintiffs had been misreporting their meter readings for about one year and that the bill that resulted from the March 1986 reading was a "catch-up bill."

Viewing the evidence and reasonable inferences favorably to the plaintiffs, we conclude Laclede's challenge to the first submission of negligent conduct in Paragraph Second of Instruction 6 is without merit.

■ Laclede also challenges the sufficiency of the evidence as it relates to the plain-

---

**10.** In pertinent part Instruction 6 reads:

"Your verdict must be for plaintiffs if you believe:
"First, defendant had a duty to supply electrical services to plaintiffs ... and
"Second, either:
defendant terminated plaintiffs' electrical services for non-payment of an electric bill which plaintiffs did not owe, or
defendant agreed plaintiffs had until the end of May to pay the billing and defendant terminated plaintiffs' electrical services without allowing plaintiffs the time agreed upon to pay the disputed billing, or

defendant terminated plaintiffs' electrical services without complying with its Bylaw Section setting forth procedures for termination of a member's electrical service, or defendant represented that plaintiffs would receive a personal visit prior to termination and defendant terminated plaintiffs' electrical services without complying with its representations to plaintiffs, and
"Third, defendant in any one or more of the respects submitted in paragraph second, was thereby negligent...."

**11.** We will limit our recitation of evidence to that which is relevant to Laclede's argument.

tiffs' hypothesis that Laclede did not comply with its bylaws. Laclede's argument is nothing more than a summary of its own evidence on the issue; it ignores the plaintiffs' evidence. The argument thus ignores our standard of review and we reject it.

■ Finally, Laclede argues that because Instruction 6 did not refer to "any particular section of the bylaws, the jury was given a roving commission to refer to any section of the bylaws." Laclede cites as authority *Hicks v. Graves Truck Lines, Inc.,* 707 S.W.2d 439, 447 (Mo.App.1986), and *Grindstaff v. Tygett,* 655 S.W.2d 70 (Mo.App.1983), but it does not advise us what it is about those opinions that supports its argument. In *Hicks,* the instruction was condemned as a roving commission because it submitted disjunctive charges of general and specific negligence. 707 S.W.2d at 447[10]. Thus *Hicks* does not apply.

The relevant portion of *Grindstaff* stands for the proposition that a verdict directing instruction must require a finding of all ultimate facts necessary to sustain the verdict. 655 S.W.2d at 73–74[1,4]. The third submission of Paragraph Second of Instruction 6 hypothesized that Laclede "terminated plaintiffs' electrical services without complying with its Bylaw Section setting forth procedures for termination of a member's electrical service...." The instruction referred to a particular bylaw section; it did not invite the jury to peruse the bylaws in their entirety.[12]

Point IV is denied.

*Comparative Fault Defense*

■ Laclede argues in Point II that the trial court erred when it struck Laclede's affirmative defense of comparative fault.

To rule on this point we assume, without deciding, that the trial court's order was erroneous. However, by statute and rule, we are prohibited from reversing a judgment unless we believe an error committed by the trial court against the appellant materially affected the merits of the action. § 512.160.2, RSMo 1986; Rule 84.13(b); *Lewis v. Wahl,* 842 S.W.2d 82, 84–85[1] (Mo. banc 1992).

Laclede claims the plaintiffs were contributorily negligent in failing to confirm the "special arrangements" for payment of the bill. The plaintiffs' evidence was that they arranged with Laclede to pay $350 by the end of April and the balance by May 30. Laclede's evidence was that the balance was due by May 16. Service was terminated May 22.

In support of its assertion that the plaintiffs were contributorily negligent, Laclede points to the following evidence: Sondra Haynam made the special arrangements with Laclede's Lebanon office by telephone, not by letter; the plaintiffs never confirmed the special arrangements by letter; the plaintiffs never requested a copy of the "log book" in which a Laclede employee had recorded the special arrangements; the plaintiffs did not telephone Laclede in May to confirm when the May payment was due, even though they had telephoned earlier to inquire about the April installment.

The facts that Laclede claims would have supported its comparative fault defense were in evidence. We believe the jury, by its verdict in favor of the plaintiffs, resolved questions concerning the "special arrangements" for payment of the bill. Thus the trial court's action in striking the affirmative defense did not prejudice Laclede and, even if the ruling was error, it does not require reversal. *First Nat. Bank of Hamilton v. Fulton,* 28 S.W.2d 368, 371[8] (Mo.App.1930); *Buschow Lumber Co. v. Union Pac. R.R. Co.,* 220 Mo.App. 743, 276 S.W. 409, 413[8] (1925). Point II is denied.

PARRISH, C.J., and MONTGOMERY, J. concur.

PARRISH, Judge, concurring.

Mindful that this court is constitutionally bound to follow controlling decisions of the Supreme Court of Missouri, I reluctantly

---

**12.** We find nothing in the trial transcript to indicate any bylaw other than the one referred to in Instruction 6 was before the jury. If other bylaws were offered into evidence, Laclede does not so advise us.

concur. *See* Mo. Const. art. V, § 2; *Chambers v. Figgie Int'l., Inc.*, 838 S.W.2d 168, 171 (Mo.App.1992).

In *Haynam v. Laclede Elec. Coop., Inc.*, 827 S.W.2d 200, 204–05 (Mo. banc 1992) (*Haynam I*), the supreme court held that plaintiffs made a submissible case for punitive damages. *Haynam I* sought recovery in tort for wrongful termination of electrical services based on intentional wrongful acts by the power company. The supreme court reversed the judgment for plaintiff for reasons not germane to this appeal. In so doing, it suggested that upon retrial plaintiffs might wish to submit their claim for actual damages on a theory of negligent termination—that both intentionally terminating electrical service and negligently terminating electrical service were actionable. *Id.* at 204 n. 1.

Upon retrial plaintiffs followed the supreme court's advice. They sought actual damages for negligent termination of electrical service. They again sought punitive damages based on the power company's allegedly outrageous conduct and evil motives or reckless indifference to their rights. Plaintiffs' efforts were rewarded by jury verdicts for $1,063.56 actual damages and $50,000 punitive damages. The trial court entered judgment in accordance with the verdicts.

Punitive damages require scienter. As stated in the principal opinion, "Essential to an award of punitive damages is evidence of the defendant's culpable mental state." *Haynam v. Laclede Elec. Coop., Inc.*, 889 S.W.2d 148, 151 (Mo.App.1994), citing *Burnett v. Griffith*, 769 S.W.2d 780, 787 (Mo. banc 1989).

The principal opinion points out that the evidence of defendant's "state of mind" was essentially the same at the second trial as that recited by the supreme court in *Haynam I*, 827 S.W.2d at 202–04. Since the supreme court held, in *Haynam I*, that the evidence supported punitive damages when the underlying cause of action was based on an intentional tort, logic dictates that the same evidence will support punitive damages when the underlying cause of action is based on negligence. I feel constrained to con-clude, therefore, that the trial court's award of punitive damages must be affirmed.

Notwithstanding the foregoing, I do not agree with the supreme court's conclusion in *Haynam I* that the evidence supported an award for punitive damages. Considering the present state of Missouri law, I believe the principal opinion's analysis regarding punitive damages is technically and legally correct. I further believe, however, that this case suggests Missouri law with respect to punitive damages is in disarray, is confusing and defies reasonable application in negligence cases.[1] I make this statement in hope that the supreme court of this state, or perhaps the general assembly, will, at an opportune time, undertake a review of punitive damages and provide an understandable statement regarding punitive damages in negligence actions. Although legally correct, I believe the result reached in this case with respect to punitive damages is unconscionable.

---

1. I do not believe the evidence in this case is akin to the evidence in *Porter v. Erickson Transport Corp.*, 851 S.W.2d 725 (Mo.App.1993), that was held sufficient to support submission of punitive damages to a jury, nor that the evidence in this case approaches that in *May v. AOG Holding Corp.*, 810 S.W.2d 655 (Mo.App.1991), that was held not to have sufficed to submit the issue of punitive damages to a jury.